Judge Underwood
delivered the opinion of the Court.
This is a proceeding instituted against Chambers, clerk of the Scott circuit court, under the 10th section, of the 4th article of the constitution, to remove him from office, for breach of good behaviour. The process which issued against him, contains the charges and sets out the breaches of official duty, for which this courtis called on to remove him. For the purpose of presenting the nature- and form of the process, which has been sustained by this court, in this case, and also to exhibit the charges on which the prosecution is based, we have thought proper to copy the process at length. It is as follows:
“The Commonwealth of Kentucky, to the Sergeant of the Court of Appeals, greeting: we command you to summon Benjamin S. Chambers, clerk of the Scott circuit court, to appear before the judges of our court of appeals, at the capital, in Frankfort, in the county of Franklin, on the 26th of November next, to answer to the following charges, exhibited against him, by the attorney general, for, and on behalf of the commonwealth, and to shew cause, if any he can, why he should not be removed from his office, as clerk aforesaid, for the following breaches of good behaviour in office, to-wit:—“The said Chambers did, on or about the day of January, 1821, as clerk of the Scott circuit court, make out, and certify officially, an order of the following purport, to-wit: “Kentucky, Scott circuit, to wit: September term, 1820. Ordered to be certified to the auditor of public accounts, that the sum of thirty dollars be continued the allowance, for the support of Hans Peeples, a person of unsound mind, for three months, ending the 10th December, 1820, and that Aaron Holland, be continued a committee to receive and appropriate the same to his use and benefit; “a copy attest, B. S. Chambers, c. s. c. c.,” which order, certified officially, as aforesaid, as the order of the Scott circuit court, at its September term, 1820, *109 the said Chambers, presented to the auditor of pub-lie accounts, about the day of with an endorsement^as .follows:—“Pay to R. S. Chambers,” Aaron Holland $30, and the said Cha.rnbefs,then, and there demanded, and received from said" auditor, a warrant upon the treasury of this commonwealth, for said $30; which warrant, said Chambers, on said day, presented to the treasurer, and received the amount thereof, to wit; $30.
“Whereas, in truth and in fact, there was no such order made by the Sc.ott circuit court, at their-September term, 1820, (a copy of which, the said order presented as aforesaid, to the auditor, and upon which the aforesaid warrant was granted) purported to he, nor was there any record in the office of said Chambers, clerk of said Scott circuit court, of any allpwance of $30, or any other sum, at said September term, 1 820, to said Peeples,or for his benefit; or in trust to said Holland, or any other person for him, and that said Chambers, at the time he certified the said paper, herein before recited, and at the time when he presented the same to the auditor as aforesaid, and received the warrant, and at the time he received the said $30 from the treasury, well knew that fio such record existed in the Scott circuit court.
(i2d. At the June term, 1821, of said Scott circuit court, the said court directed, and there was entered upon the records of said court, an order, of the purport following: • ,
' “Ordered to be‘certified, to the auditor, of public accounts, that the sum of sixty dollars, be-allowed for the support, and maintenance of Hans Peeples, a lunatic, for six months, commencing on the lOtii day of March, 1821,and ending .on the 10th day. of Septercjber, 1821; and that John N. Lyle, be continued a committee to receive, and appropriate the allowance aioresaid to his support; and it is further ordered, that the. sum of thirty dollars, be allowed for the purposes aforesaid, commencing on the 10th of September, 1820, and ending on the 10th of December, 1820, being omitted in,a former order, through mistak'e.
“And afterwards to wit: the day of when said Chambers, clerk as aforesaid, was applied *110 to by said Lyle, for a copy of the order last recited, to be presented to the auditor, "for a warrant upon the for the allowance therein specified, he the said Chambers, clerk as aforesaid, made out, certified, and delivered, as a copy of said order, a paper of the following purport:
liScott Circuit, Set. June term, 1821.
“Ordered to be certified .to the auditor of public accounts, that the sum of sixty dollars, be allowed for the support and maintenance of Hans Peeples, alunatic, for six months, commencing on the 10th day of March, 1821, and ending t>n the 10th day of September, 1821, and that John N. Lyle, be continued a committee to receive, and appropriate the allowance aforesaid, to his support.
“A copy attest, B. S. CHAMBERS, c. s. c. c.”
“The said Chambers, then and there, well knowing that the paper last recited, was not a full and complete or correct copy from the records of said court; but omitting wilfully and designedly, to copy and certify the latter part of said order of court, thereby the more effectually', to conceal the facts- set forth in the first specification.
“3d. An action of ejectment in the name of Alexander McClelland as lessor of the plaintiff against said B. S. Chambers, &c. had been instituted in said Scott circuit court, and prose.cuted to judgihent, and a judgment was rendered in favor of the lessor of the plaintiff, and on the day of a ha. fa. was issued from the clerk’s office of said court, and put into the hands of John N. Lyle, a deputy sheriff of said county of Scott, to be executed, who in pursuance of the command of said writ, executed the same, and delivered possession of the lands to the plaintiffs lessor, or his agent, and returned said process to the clerk’s office of said court, the said Chambers, then being clerk thereof, with his official return thereon endorsed, shewing the manner in which he had executed the same; that the said Chambers, clerk as aforesaid, instead of recording the said return, of said deputy sheriff, truly, and as it was made, in the book kept for that purpose, falsely and fraudulently recorded *111 in said book, in the room of said return of said deputy sheriff on said process, in substance as follows:
Evidence.
“Returned without being executed, by agreement.
“Attest, B. S. CHAMBERS, clerk.”.
And fraudulently suppressed, said ha. fa» returned as aforesaid; by means of which false and fraudulent conduct on the part of said Chambers, clerk as aforesaid, he was enabled to succeed, (and hold said land) in a subsequent controversy in court, in respect to it.
“4th. The said Chambers, with intent to hold the land alluded to, in the third specification, and to defraud the plaintiff, in said ha. fa. the more effectually to consummate his object, suppressed the ha. fa. mentioned in said third specification, and made out another ha. fa. of like import; but without a return, endorsed thereon by the sheriff, and substituted it in the room of the other.
“And this, he shall, in no wise omit, and have then there this writ. Witness, Jacob Swigert, clerk of our said court, at the capitel aforesaid, this 27th day of October, 1828, and in the 37th year of the commonwealth.
J. SWIGERT, c. c. a.”
The proof in support of the charges, consists of record evidence, and parol testimony.
It is clearly proved, that Chambers presented at the auditors office, on the 5th of January, 1821, a paper purporting to be a copy of an order, of the Scott circuit court, made at the September term, 1820, continuing the allowance of $30 for the support of Hans Peeples, (a copy of which, is truly set out, in the first charge) that he received a warrant on the treasury, for the amount, and receipted for it, on the back of the paper, so presented. There is an endorsement on the paper presented at the auditors office, in these words: “Pay to B. S. Chambers, Aaron Holland.” The allowance on the face of the order, appearing to have been made to said Holland, as committee for the lunatic, the object of the endorsement, seems to have been, to authorize Chambers to draw the money. It was proved, that the words “pay to B. S Chambers,” *112 wprein the hand writing ofChambers; but who wrote the signature of Aaron Holland, was not established. Holland himself was introduced as a witness. He stated that the thumb of his right hand had-received an injury, which had prevented him from writing with great uniformity, and said, the signature might, or might not be his, and did not say whether it' ivas or was not. A report made to the Scott circuit court, at their March term, 1821, was presented, signed by said Holland, which stated in substance, that the allowance of $30, for three months, ending on the lOlh of December, 1820, for the support of Hans Peeples, had been' expended for his maintenance. The signature to this report, Holland recognized as his. The body of the report was proved to have been written in the hand writing of Chambers. Although Holland signed the report, he stated, that he had never received or expended a cent of the money allowed for the support of Peeples, as set out in the report. It was proved by Rhodes Thompson, who had been committee for Peeples, and who had declined to act in that capacity again, that at the request of the court, he had called on Holland, to ascertain whether he Would act, that Holland declined acting, and that he so informed the court on the next day. Thompson could not state positively, at what term of the court' he gave the information as to the refusal of Holland to act; but thought it was in the fall. -If his impressions were correct, it must have been at the September term. The order book of the September term, 1820, of the Scott circuit court, docs not shew that there was any allowance for the support of Peeples. It is entirely silent on the subject. If the evidence stoped here, in what light would the conduct of Chambers be presented? Surely in a most unfavorable aspect. The conelusion would be inevitable, that he had as clerk, withóut the semblance of authority, made out a paper purporting to be a copy of the record, allowing $30, for the support of Peeples, when no such record existed; that he had induced Holland, or one man, in his name, to endorse the paper, so as (o authorize him to draw the money; that he had received the money, and had not paid over a cent of it to the committee. Holland, who was entrusted with its disbursement for toe luna *113 eéurt, wht$i Holland signed, staíift|^bat .ttegy money liad been pboperly applied, when fibj'HolmuTf, knew nothing about its appropriation, at least, whptí he never expended a cent of it, for the lunatic’s use, none of it having come to his hands. Such a -state of facts; would present such a palpable breach of good behaviour iti office, that this court would not hesitate to remove him. But it is attempted to show, that the foregoing, is not the true state of the case, and for that purpose, ilie minute book of the Scott circuit court has been given in evidence. There appears in the minute book of the proceedings of the Scott circuit court, at tiie September term, 1820, the following entry, made undeq the date of September 11th, 1820, at the bottom of the page, “allowance to Hans Peeples continued; same committee continued.'1’’ Audit is contended that this minute, through some omission of the clerk, not criminal, was not carried on the p,fder book; in making up the record, as it should have been done. At the June term, 1820, of the Scott circuit court, Aaron Holland, was appointed committee for Hans Peeples, to disburse an allowance, made for his support, as the record proves. The allowance at the June term, was $30, for three months from .the lpth of June, to the 10th of September, following. • And it is urged, that the minute above, having reference'to the order made at the June.term, did, with sufficient certainty, make an allowance of $¡30, for the support! of Peeples for three months, up to the 10th of December, 1820, and continued Holland as committee, to receive and appropriate it; and that in consequence thereof, Chambers, the clerk, was justified in making out the certificate, purporting to be a copy of the record, upon which the auditor issued his warrant for the money. But if he was not strictly justified, it is contended, that the existence of the minute, shews that Chambers could not wilfully, and knowingly, have erred in the transaction. It would have given the. court .pleasure to have regarded the conduct of the clerk, in the favorable point of view presented by his able counsel, predicating his conduct, upon the existence of the minute. But there is other testimony in this cause which forbids it. Before we notice this testimony, we will *114 make a few remarks relative to the nature of the minute book; We regard it as a book, used by the clerk, in which, to make memoranda of the proceedings of the court, while the court is progressing with business. The business transacted by the court, is stated in the minute hook, in short notes, and these are written out on the order book, or record proper, at full length, as the clerk has time. When so written out, and signed by the judge, they constitute the proper records of the court, and until signed by the judge, they cannot with propriety be considered the record. We know, that the judges, ofthe circuit courts, sometimes by signing the minutes, give, or attempt to give, the minute book, the force of a record; but this is a practice, which we think, ought not to be tolerated. The minutes are, generally, too imperfect, to shew clearly and fully, what the court has decided, and done. The practice of permitting the clerk after the adjournment of the court, to write out the minutes at full length, and to insert many things which cannot appear from the minutes, does pro tanto constitute him in fact a judicial officer in vacation. Such practices should be discountenanced. But in this case, it does not appear, that the minute relied on, was ever signed by the judge. It derives therefore, no efficacy as a record, upon the ground of its having-received the approving signature of the judge. The question then presents itself, could Chambers, have so mistaken theeffectof thatminute, as to have regarded it as the record, for the purpose of making out the paper, on which he drew the money? The money was drawn in January, as already stated. Was the paper, purporting to be the copy of the record made a day or two before it was presented to the auditor, or when was it done? In commenting on this matter, the attorney general spoke of it as having been made in January, when Mr. Chambers corrected him, by suggesting, that it was made at the time the minute was entered, or shortly afterwards. Take it either way, and it is a circumstance, which operates unfavorably to the accused, The minute is under date of the 11th September, 1820, which was on the Monday ofthe second week of the term of the court. If the paper on which the money was drawn, was made out after the adjournment of *115 the court, it was the clerk’s duty, to search the order book for the authority to make it. Had he done so, no authority for it would have been found. If he made it out during the term, or on the day, the minute was entered, it was wrong; because the court had power over the record, during the term, and nothing which bad been done, should have been certified as official, without leave of the court, until after the adjournment. Besides, as the money could not have been properly drawn until the end of three months, when it might appear, owing to the continued lunacy, and life of Hans Peeples, that it was proper to draw it; the motive cannot be perceived, for making the paper, and retaining it three months, especially as it is in proof, that the committee refused to act, and never got a dollar of the money. The testimony of Lyle fortifies these considerations, and rivets the conviction, that Chambers, has violated his duty, in making out, presenting and drawing money on a paper, purporting to be a copy of the record, when no such record existed. Although Lyle, did not pretend to give the language used by Chambers,, in the conversations had with him; yet he stated some things, as the- result of those conversations, in which he could not well be mistaken, unless he, designed to commit perjury. He spoke from his best recollection, and although his memory when tested on another subject, was shewn not to have been infallible, still we cannot disregard what, he said, unless his credibility had been impeached. Lyle was appointed committee for Hans Peeples, at the March term; 1821, of the Scott circuit court; after his appointment, the wife of Peeples complained to him, that there was more money in arrear, coming to them, than had been appropriated by Lyle. The order appointing Lyle, only allowed $30 for three months, commencing on the 10th December, 1820, and ending on the 10th of March, 1821; thus making no allowance, for the period, from the 10th of September, to the 10th of December. Lyle spoke to Chambers, on the subject, who in substance told Lyle, as he deposed, that he, Chambers, had been in Frankfort, and wanted some money, and had drawn some for Lyle, and that he, Chambers, thought he would take that liberty with Lyle. Lyle remarked, that there was no order of *116 court for it, Chambers said, if there was not, he could arrange that matter,, at the next court. Lyle exhibited areceiptfrom Peeples’ wife, dated 17thMay-, 1821, acknowledging the payment of tea dollars, “balance in full, for maintaining Hans Peeples, six months, commencing on the 10th September, 1820, and ending the 10th March, 1821.” He said, that he believed, that Chambers had paid him the money; although, he did not recollect the place, where, or time, Vvhen, it was paid him. This testimony of Lyle’s, so far as it relates to arranging the matter, at the next court, by supplying the want of an order, is corroborated by the record. For at the June term, 1821, there was added to the order, allowing $60 for Peeples’ maintenance for six months, from the 10th of March, to the 10th of September, 1821, these words, “and be it further ordered, that the sumof $30, be allowed for the purposes aforesaid, commencing on the 10th of September, 1820, and ending on the 10th of December, 1820, being omitted in a former order through mistake.”
Holland’s report to court.
it. Thompson’s evidenc.
The order book.
The entry in the minute boollJ
The nature of the minute book.
The minutes are no record until transcribed, in extenso, upon the order book and signed by tho judge.
Eyle’» evidoDOC-
Foot of the order of June, 1821.
This testimony of Lyles, cannot be reconciled with the idea, that Chambers drew 1 he money innocently, upon the paper endorsed to him by Holland; for he would not have acknowledged, that he had drawn the money for Lyle, being in want of cash, and believing he could take that liberty, if he had drawn the money in good fait;', for Holland. It was urged in argument, that Lyle must have been mistaken on this point, because be was not entitled to the money, his appointment arid authority to receive, not extending further back than the 10th of December, 1820. We think it more consistent with the general tenor of the evidence, to believe that Chambers was conscious that he had drawn the money wilhout proper authority, and without the knowledge of Holland, than to presume a mistake in Lyle’s statement, and we are not without strong grounds for this opinion. If Chambers drew the money for Holland, why not pay it over to him? Would Holland have endorsed, so that Chambers might get the money, if he intended not to receive it and expend it for the use of the lunatic? If Chambers, after getting the money, did not pay it to Holland, who says he never got it, by whom did he pay it, if *117 it were not paid to Lyle? The conclusion to our minds is irresistable, that the money was paid to Lyle. Hoiland and Lyle were the only persons that stood in a situation, which would justify the reception of it; one says ho never got it, the other says he believes he did. His receipt shows it. This conclusion cannot be evaded, unless it be by supposing that Chambers himself expended the money, for the use of Peeples, thus taking upon himself, a troublesome trust without authority; a supposition which it would be rash to indulge in, when there is not a particle of evidence on which to predicate it, and when it was so easily proved, if true. It is more natural to believe the testimony, that Chambers, being in Frankfort and wanting money', thought he could take the liberty of getting it, and having got it, when called on by Lyle, made the statements detailed by him, as a palliation for having done so, not having appropriated the money', or disclosed the fact that he had received it. There is another part of the evidence, which strengthens the conviction, that the money was improperly drawn by Chambers. Ih tendency is strong to confirm the belief, that the signature of Holland, on the paper presented to the auditor, is not genuine. We allude to the application of Chambers to Rhodes Thompson, to write the name of Holland on a piece of paper. The object of this was to ascertain whether the name of Holland had not been written on the paper presented to the auditor, by Thompson, who had once been concerned as committee for Peeples. This could only have been done upon the idea, that Holland’s signature was not put on the paper by himself, but by another, and that it was desirable to find out who that person was. This took place after this prosecution was agitated. Besides the dissimilarity in the character of the letters, in the signature of Holland, admitted to he genuine, and those in his name, upon the paper presented at the auditors office, cannot be readily accounted for, by an injury or hurt of the thumb. .The foregoing views of the evidence are not weakened by the testimony of Suggett, who recollects that the court were in the habit of making allowances for the support of Peeples, at every term, without being able to detail the particular times when allowances were *118 or were not made; nor by the testimony of Penny and others, who were intimate with Peeples and his family, and heard no complaiut, that the money allowed for the three months, between the 10th of September and the 10th of December, 1820, had not been applied to the use of Peeples. The whole can well stand together.
F ord’s evt denoe.
We have not deemed it important to say any thing, on the Subject of the leaves being torn out of the minute book, nor do we consider it essential to consider the point, whether the minute made under date of the 11th September, 1820, was not transferred to the order book through mistake, or whether it was intentionally omitted, because Rhodes Thompson informed the court, that Holland would not act as committee, or whether it has been put in the minute book since this prosecution commenced. There is one circumstance, however, growing out of the testimony of Ford, which we will mention. When he examined the minute book, to ascertain what entries had been made therein, relative to Hans Peeples, he states, that although he did not find the minute under date of September 11th, 1820, he found an entry dated March, 1821, making an allowance for six months,, which, when transferred to the order book, was reduced to three months; and he then told the prosecutor that he ought to be satisfied. We have examined this entry in the minute book. The time is designated by a figure, and whether it was intended for a 3 or 6, or whether it has been altered from a 3 to a 6, it is difficult to decide. Be that as it may, it was the minute on which the order was made, first appointing Lyle committee at the March term, 1821, of the Scott circuit court, making an allowance of $¡30 for the support of Peeples, for three months, from the 10th of December, 1820, to the 10th of March, 1821. The minute as it stands, forces on us these remarks. If the figure was originally a 6, why was the order formed on that minute for three months only? We cannot tell, unless it was to conceal the fact, that the money for three months of the time, had been drawn in the preceding January, by Chambers. If it was originally a 3, and has been since altered, it evidences a fraudulent design. That minute which seem *119 ed to satisfy. Mr. Ford’s mind, that all was right, has not had the same effect on the mind of the court.
Evidence in support of the second charge
Third charge not supported ■ by the evidence.
The evidence in support of the second charge, exists on the record, as stated in the charge, that is, the order of the June term, 1821, is put on record as copied, and the proof is conclusive, that the clerk, Chambers, in making out a copy for Lyle to draw the money, omitted to copy that part of the order allowing §30, for time commencing on the 10th of September, 1820, and ending on the 10th of December, 1820. No reason ean be assigned for this omission, but. the fact, that Chambers had, himself, previously drawn the money allowed for the support of Peeples, during that time.
The third charge is not sustained by the evidence. The accused has satisfactorily exculpated himself from those suspicions of impropriety, which might have rested on him, had the testimony adduced in support of the charge remained unexplained; and we regret that he has not been equally fortunate in respect to the two first. And even in regard to them, we hope his conduct has not been the result of any settled depravity of heart, although we cannot resist the conviction, that it has amounted to a breach of good behaviour in office. Under such a conviction, it is our painful duty, to pronounce the sentance of the law. It is severe, but yet it is salutary. The records in the offices of our clerks, contain the evidences of all our titles, either in the form of deeds, wills or administration and distribution of intestates estates. In them the rights of all are registered, as generation succeeds to generation. In our circuit courts, the life, liberty, reputation, contracts and property of the citizen are often brought in question, and the adjudications of the courts, are recorded by their clerks. And we wish it to be known by that valuable class of our officers, whose functions are almost, if not exclusively ministerial, that they violate their duty whenever they do any act in making, suppressing or altering the record, unless it be sanctioned by the court, or provided for by law. It is through the medium of clerks, that the people have access to the treasury, for many purposes. Commonwealth’s witnesses, venire _men, &c. &c. are *120 paid on their certificates. It is important.for the well-fare of the state, that clerks should be strictly correct upon all occasions. And they will find it a matter of infinite importance to themselves, if they visit the treasury and draw the money upon claims, passing through their own hands, unless such claims are fully sanctioned by their courts or by the law.
if the act per sc, be a breach of good behaviour, (as it may be) the motive will not be investigated.
In adjudicating upon the conduct of clerks, this court cannot enter into a consideration of the motives which influence their conduct. The simple enquiry under the constitution, is, has a breach of good behaviour in office, been established by the proof? If it has been, whether it proceeded from ignorance, good intentions or bad, the consequences are the same, (in their nature, although they may not be in degree) to the community. A clerk may do an act from the best motive, and yet, he might place himself in sdeh an attitude by it, as imperiously to require his removal. Suppose a clerk, in drawing up his record, were to enter judgment against an executor de bonispropriis, instead of He. bonis testatoris; or suppose he were to leave out interest on a note, or to give it from an improper date, and after the adjournment of court, suppose him to sot about correcting these blunders of his, by altering the record. If one clerk may do these things, all may; and thus, in effect, a power would be be conceded to them, in vacation, of revising and correcting the acts of the court, under the pretence of innocently rectifying their own errors. We give to record evidence, absolute verity. This principle, which has been settled for ages, ought to be overturned as soon as the doctrine shall prevail, that clerks may alter and change their records, in vacation, according to their opinions of propriety. A greater strictness, if possible, should b'c observed, and a more rigid rule applied in judging of the conduct of clerks, where they undertake to certify what the record is. Herfe they have it in their power to do great mischief, by imposing on those who receive their certificates as containing absolute truth. In this case, by certifying as the record, what was not, it became necessary to suppress, afterwards, the real record, and thus a false certificate was substituted in place of the truth.
Denny, attorney general, for the commonwealth; Crittenden and Richardson, for the accused.
The lapse of time, since the acts were done by Chambers, that constitute the foundation of the prose-' cution, has'been relied on in his behalf. We know oí no limitation to investigations.of this character. The delay in bringing forward the charges, may be a ground of imputation, against those who have been instrumental, at so late a period, in setting on foot the prosecution. It may be said, that private malice, and not the public welfare, is at the bottom of it. With these things, the court have nothing to-do, further than to make the age of the transactions so operate, as to induce us to receive the parol proof in relation to them, with great caution.
In conclusion, we shall state, that good behaviour in a clerk, consists in discharging accurately and faithfully, and in proper time, all the duties required of him bylaw, in making correct records of the judicial acts and proceedings of his court, under the superintendance of the court, so that the whole record, when signéd, shall have received the approbation of the court, and then, in preserving the records so made, inviolate and unchanged, subject alone to such amendments as may be made by the court, and in certifying that which the law requires him to certify, and that which the record warrants him to certify, and nothing more nor less. Believing that the accused has fallen short, in the discharge of his duty, according to this rule, and has been guilty of a breach of good behaviour in office, it is our duty to pass sentence. .
Wherefore, it is considered and adjudged, that Benjamin S. Chambers, clerk of the Scott circuit court, is guilty of a breach of good behaviour in office, in manner and form as set forth in the first and second charges exhibited against him. And it is further considered, ordered and adjudged, that the said BenjaminS. Chambers, clerk of the Scott circuit court, aforesaid, shall be, and he is hereby removed from his said office of clerk of the Sc.ott circuit court aforesaid. The members of this court concurring in this sentence.
*122 rpfie defendant, by his counsel, applied for a new trial, on following affidavit and petition.
Commonwealth of Kentucky:
Franklin.County, set.
Benjamin S. Chambers, this day, personally appeared before me, Henry Wingate, a justice of the peace, for the county aforesaid, and made oath, that since his trial upon the late prosecution against him, in the court of appeals, he has acquired information of testimony, that would have been material and important to his defence, and, as he hopes, decisive in hi's favor. He states, that he believes the fact to be, that when Rhodes Thompson, whose testimony is referred to, and will be recollected by the court, learned from Holland his unwillingness to serve as committee for the lunatic, Hans Peeples, that he informed the court to that effect; but, at the same time, desired that Holland might stand or be appointed committee, saying that he (Thompson,) would do the business for him; that he can prove the truth of this statement, by E. P. Suggett. He can also prove, as be verily believes, bv William Suggett, Andrew Johnson, and many others, that the signature of Holland’s name, on the copy of the order of allowance to H. Peeples, produced from the auditor’s office, is in the hand writing of the said Rhodes Thompson.
The affiant also states, that he does verily believe, he can prove, by Gen. John Payne, the repeated declarations of the said Thompson, that he (Thompson,) knew that the $¡30, (the money drawn from the treasury, by virtue of the aforesaid copy of said order,) was paid to Mrs. Peeples, the lunatic’s wife, at the proper time.
He further states, that he can prove, that John N. Lvle, who was a witness upon the trial of said prosecution, after his examination, and after the evidence on both sides was closed, when complaining of the severity of the remarks of counsel, on his testimony, said,.that the counsel was severe upon him; but that he had been mild in his testimony, and that if he had it to go over again, he could, or would, tell a great deal more. That he can prove this statement, in relation to Lyle, by Edward Johnson, and many others.
Petition for a re-hearing.
He further states, that he has discovered the whole, of the above mentioned evidence, since the close of the evidence upon said trial; nor even then, nor until since the opinion of the court, upon said prosecution was rendered, was he apprised of the materiality of said newly discovered testimony.
B. S. CHAMBERS.
Subscribed, and sworn to, before me, this 6th of February, 1829. H. WINGATE, J. P.