[No. 12026. Department Two. June 6, 1914.]

## E. T. PYBUS, *Appellant*, v. HANS J. SMITH, *as City Clerk, Respondent.*[1]

MUNICIPAL CORPORATIONS — OFFICERS — RECALL—GROUNDS—"MAL-FEASANCE"—TRADING VOTES IN COUNCIL. It is "malfeasance" in office, within the meaning of 3 Rem. & Bal. Code, § 4940-1 *et seq.*, authorizing the recall of city officers, for councilmen to make an agreement for the trading of votes whereby each yielded his personal judgment in voting on certain appointments and matters in consideration of the promise of votes on other matters of special interest to him.

Appeal from a judgment of the superior court for Chelan county, Pendergast, J., entered April 16, 1914, dismissing an action for an injunction, upon sustaining a demurrer to the complaint. Affirmed.

*Williams & Corbin*, for appellant.

*Fred Kemp* and *E. L. Baker*, for respondent.

*Whitney & Hughes* and *Sam R. Sumner*, for intervener.

PARKER, J.—The plaintiff, a councilman of the city of Wenatchee, seeks to have the defendant, as city clerk of that city, enjoined from calling a special election submitting to the voters the question of recalling and discharging the plaintiff from the office of councilman. The defendant demurred to the plaintiff's complaint upon the ground, among others, that it did not state facts sufficient to entitle the plaintiff to the relief prayed for. The demurrer being, by the court, sus-

[1]Reported in 141 Pac. 203.

tained upon this ground, the plaintiff elected to stand upon his complaint and not plead further. Thereupon, judgment of dismissal was entered accordingly. From this disposition of the cause, the plaintiff has appealed.

Attached to the complaint as an exhibit, and made a part thereof, is a copy of the charge made against appellant by the voters who demand his recall and discharge. Petitions for appellant's recall and discharge, containing a synopsis of this charge, having been signed by the requisite number of voters, respondent, as city clerk, being about to call a special election in pursuance of our constitutional and statutory recall provisions, this action was commenced, seeking to enjoin him from so doing. Appellant's principal contention is that the charge made against him by the voters who demand his recall is not sufficient in law to warrant his recall and discharge from office and, therefore, do not constitute legal cause for the calling of an election to vote upon that question. It is alleged in the charge made against appellant, in substance, after stating in some detail various matters pending before the city council, that he specially desired certain action to be taken by the city council in certain of these pending matters; that other councilmen especially desired certain action to be taken by the city council in certain others of these pending matters; and:

"That said E. T. Pybus and said councilmen Zener, Hines and Wilson, each well knowing said facts as above alleged, and while in office as said councilmen, on or about the 6th day of January, 1914, and for the sole purpose of carrying out their respective wishes in the premises and preventing said matters and appointments from being fairly and impartially determined by said councilmen, solely on the merits thereof according to the best and uninfluenced judgment of said several councilmen, did wilfully, knowingly, intentionally and unlawfully conspire together and mutually enter into an improper, unlawful and corrupt understanding and agreement to cast their several votes on said propositions as follows, to wit:

"E. T. Pybus agreed to cast his vote to reject the appointment of N. Inscho as chief of police and in consideration therefor, W. R. Wilson agreed to cast his vote in support of and to adopt the said proposed Sunday closing ordinance.

"E. T. Pybus further agreed to cast his vote to reject the confirmation of F. M. Berry as city engineer and in consideration therefor C. A. Hines agreed to cast his vote in support of and for the adoption of said proposed Sunday closing ordinance; all of said parties agreed with each other that said several propositions should be voted upon by them and each of them alike and in the following manner, that is that they would each vote to reject the appointment of N. Inscho as chief of police, to reject the appointment of F. M. Berry as city engineer, and to adopt and pass the Sunday closing ordinance, and to confirm the appointment of one W. W. Gideon (the father-in-law of said councilman C. R. Zener) as chief of police if the mayor of said city could be prevailed upon to appoint said Gideon to said position."

This is followed by an allegation that the agreement between the appellant and the other councilmen was carried out by each voting in accordance with the agreement. There is no allegation, however, that appellant or any of the other councilmen was to receive or did receive, any personal benefit. The allegations of the charge are, in substance, simply that. appellant yielded his personal judgment in voting upon the matters he was not specially desirous of having decided in any particular way, solely in consideration of, and to the end that the matter he was specially desirous of having decided in a particular way should be so decided by the council.

Our statute making effective the recall provisions of the constitution provides that when any voter or voters desire to demand the recall and discharge of any elective officer, "he or they shall prepare a typewritten charge, reciting that such officer, naming him and giving the title of his office, has committed an act or acts of malfeasance, or an act or acts of misfeasance while in office . . . which charge shall state the act or acts complained of in concise language, without unnecessary repetition . . ." Laws of 1913, p. 454 (3 Rem.

& Bal. Code, § 4940-1 *et seq.*). We have no constitutional or statutory definition of the words "malfeasance" or "misfeasance," as here used. The controlling question here presented is, Is this alleged corrupt agreement, made between appellant and the other councilmen, and the carrying of it out by them, an act of malfeasance within the meaning of that term, as used in this act and the constitution? The only decision called to our notice which seems to be directly in point is that of the general court of Virginia, rendered in 1825, in *Commonwealth v. Callaghan and Holloway*, 2 Virginia Cases 460. In that case, there was involved the question of the sufficiency of an information charging John Callaghan and John Holloway, two magistrates, whose official duty required them to vote upon the choosing of a revenue commissioner and a clerk of their court with making and carrying out an unlawful agreement as to how each should vote. It was charged:

"That at a court held for the county of Alleghany, there was an election for the office of Commissioner of the Revenue, and of clerk of said court, when the Defendants were both present, and acting in their official character as Magistrates, in voting in said election; that the Defendant *Callaghan*, in said election for Commissioner of the Revenue, wickedly and corruptly agreed to vote, and, in pursuance of said corrupt agreement, did vote for a certain *W. G. Holloway*, to be said Commissioner, in consideration of the promise of the Defendant *Holloway*, that he would vote for a certain *Oliver Callaghan* to be Clerk of said Court; and that the Defendant *Holloway* in the said election of Clerk, wickedly and corruptly agreed to vote, and in pursuance of said corrupt agreement, did vote for a certain *Oliver Callaghan* to be said Clerk, in consideration of the promise of the Defendant *Callaghan*, that he would vote for the aforesaid *W. G. Holloway*, to be Commissioner."

The charge was held to be sufficient as charging the defendants with the commission of a misdemeanor at the common law, the court observing:

"The Defendants were Justices of the Peace, and as such, held an office of high trust and confidence: In that character, they were called upon to vote for others, for offices, also implying trust and confidence: Their duty required them to vote in reference only to the merit and qualifications of the officers; and yet upon the pleadings in this Case, it appears, that they wickedly and corruptly violated their duty, and betrayed the confidence reposed in them, by voting under the influence of a corrupt bargain, or reciprocal promise, by which they had come under a reciprocal obligation to vote respectively for a particular person, no matter how inferior the qualifications to their competitors. It would seem, then, upon these general principles, that the offence in the information is indictable at Common Law. But, there are authorities which apply particularly to the case of justices. In 1 *Bl. Com.* 354, n. 17, *Christian;* it is said, if a Magistrate abuse his authority from corrupt motives, he is punishable criminally by Indictment or Information.

"Again, where magistrates have acted partially, maliciously or corruptly, they are liable to an Indictment. 1 *Term Rep.* 692; 1 Burr. 556; 3 Burr. 1317, 1716, 1786; 1 Wils. 7. An instance of their acting partially, is that of their refusing a license from motives of partiality, the form of the Indictment for which is given in 2 Chitty's Crim. Law, 253.

"We are then of opinion, for the reasons, and upon the authorities aforesaid, that the offence stated in the Information is a misdemeanor at Common Law, for which an information will lie, but that it is not within the Statute referred to."

The court evidently regarded the defendants free from guilt of the more serious statutory offense sought to be charged, because they were not charged with acting in consideration of personal gain to themselves. But that did not free them from guilt of misdemeanor if the charge be proven true. Whether this appellant could be convicted of a misdemeanor in our state upon the charge here made may be regarded as somewhat doubtful. But we are, however, of the opinion that the facts here charged against the appellant, if true, do constitute malfeasance in office on his part, within the meaning of that word as used in our constitutional and

statutory recall provisions, and form sufficient legal cause for submitting to the voters of the city the question of his recall and discharge from public office. The following authorities lend some support to this view, though we do not cite them as being directly in point: *Minkler v. State ex rel. Smithers*, 14 Neb. 181, 15 N. W. 330; *State ex rel. Tilley v. Slover*, 113 Mo. 202, 20 S. W. 788; *Bradford v. Territory ex rel. Woods*, 2 Okl. 228, 37 Pac. 1061; Mechem, Public Officers, § 458. In the text of 9 Cyc. 485, touching the illegality of contracts which tend to interfere with the proper administration of government, the learned editors say:

"A people can have no higher public interest, except the preservation of their liberties, than integrity in the administration of their government in all its departments. It is therefore a principle of the common law that it will not lend its aid to enforce a contract to do an act which tends to corrupt or contaminate, by improper and sinister influences, the integrity of our social or political institutions. Public officers should act from high consideration of public duty, and hence every agreement whose tendency or object is to sully the purity or mislead the judgments of those to whom the high trust is confided is condemned by the courts. The officer may be an executive, administrative, legislative, or judicial officer. The principle is the same in either case."

Other questions presented in the briefs of counsel do not call for discussion, in view of the conclusion we have reached.

The judgment is affirmed.

CROW, C. J., MOUNT, MORRIS, and FULLERTON, JJ., concur.