[No. 25740. Department Two. July 5, 1935.]

THE STATE OF WASHINGTON, *on the Relation of John Nisbet et al., Respondents,* v. W. A. C. COULTER, *as Clerk of Consolidated School District No. 40 of Jefferson County, Appellant.*[1]

[1]Reported in 47 P. (2d) 668.

*W. J. Daly,* for appellant.

*Trumbull, Severyns & Trumbull,* for respondents.

BLAKE, J.—The defendant is a clerk and director of consolidated school district No. 40, in Jefferson county. The relators are legal voters of the district. Pursuant to Rem. Rev. Stat., § 5351 [P. C. § 2306], they, with other legal voters of the district, filed with defendant, as clerk, a petition for his recall as director of the district.

The defendant having refused to formulate a ballot synopsis of the charges contained in the petition, as required by Rem. Rev. Stat., § 5352 [P. C. § 2307], relators, pursuant to Rem. Rev. Stat., § 5363 [P. C. § 2318], petitioned the superior court for a writ of mandamus to compel him to do so. Defendant demurred to the charges on the ground that they failed to state facts constituting malfeasance or misfeasance in office. There were six separate charges. The court sustained the demurrers to the second and sixth charges. Overruling the demurrers to the other charges, it entered judgment directing that the writ be issued. Defendant appeals.

We are called on to determine whether the facts stated in the first, third, fourth and fifth charges constitute either malfeasance or misfeasance in contemplation of the eighth amendment to the constitution and Rem. Rev. Stat., § 5350 [P. C. § 2305]. The charges are as follows:

"FIRST: That on or about April 8, 1935, the said W. A. C. Coulter, while a director of said School District No. 40, Jefferson County, Washington, entered into a corrupt, fraudulent and illegal agreement with Hans Heg, another director, to release, relinquish, give and convey to one William Bishop, without consideration and without payment or reimbursement to said school district in money or value of any kind, certain valuable property of the said school district, to-wit: a certain water right and part ownership in the water system and water supply of said school district of the value of Three Thousand Five Hundred ($3,500) Dollars theretofore owned by said school district in conjunction with the said William Bishop and used for the purpose of supplying water for all purposes to the school building and grounds owned and used by said district, and in furtherance of said corrupt, fraudulent and illegal agreement the said W. A. C. Coulter and Hans Heg, did squander, waste, dissipate and unlawfully expend the property and assets of said district and did illegally, wrongfully and in fraud of said school district, and without submitting the same to a vote of the electors, release, relinquish, give and convey to the said William Bishop, wholly without consideration and without there being paid to said district any money or other thing of value therefor, the water right and the interest of said school district in the water supply system and did, without a hearing and over the protest of the other member of said school board, cause a release of said water right and a conveyance of the water supply system to be executed in favor of and delivered to the said William Bishop, all of which is in violation of the statutes and laws of the State of Washington. . . .

"THIRD: That during the months of March and April, 1935, the said W. A. C. Coulter, while a director

of School District No. 40, Jefferson County, Washington, did so alter, change and remodel the furnace and heating system of a certain building owned and operated by said School District and known as the Chimacum School that it became and now is impossible to use and burn in said furnace and heating system fuels mined, grown, cut or otherwise produced within the State of Washington, all of which is contrary to Sec. 10322 of Rem. Rev. Stat., and Chap. 179 of the Laws of 1933.

"FOURTH: That on or about April 8, 1935, the said W. A. C. Coulter, while a director of School District No. 40, Jefferson County, Washington, did fail, neglect and refuse to burn and use in the heating system of a certain school building owned and operated by said school district, and known as the Chimacum School, for the purpose of heating said school building during the school year of 1934-1935, fuel mined, grown, cut or otherwise produced within the State of Washington, and does now refuse to burn, use and consume such fuel, but on the contrary, at all times herein mentioned has and does now use, burn, and consume in said school building and the furnace and heating system thereof, for the purpose of furnishing heat for said school building, fuel produced outside the State of Washington, all of which is contrary to the statutes of the State of Washington, in such cases made and provided.

"FIFTH: That during the month of April, 1935, W. A. C. Coulter, while a director of School District No. 40, Jefferson County, Washington, and for the sole purpose of carrying out his personal wishes and venting personal spite and for the sole purpose of preventing the matters of appointments from being fairly and impartially determined by the school board solely upon the merits thereof upon the best and uninfluenced judgment of its several directors and in accordance with the best interests of said school district, did, wilfully, knowingly, intentionally and unlawfully conspire together and mutually enter into an improper, unlawful and corrupt understanding and agreement with Hans Heg, another director of said school district,

to cast his vote discharging certain teachers of said school district if the said Hans Heg would cast his vote as discharging John D. Phillips, Superintendent of said Chimacum School, and in furtherance of said agreement and in accordance with the agreement entered into between the said W. A. C. Coulter and Hans Heg and for the purpose of personal revenge and contrary to the interests and benefit of the school district and without permitting a hearing by said teachers and over the protest of the remaining member of said school board, and over the protest and against the application and petition of over ninety per cent of the electors, citizens and taxpayers of said school district, the said W. A. C. Coulter and Hans Heg did, maliciously, spitefully, and for personal revenge, dismiss, discharge and refuse to re-employ five certain teachers, to-wit: John Campbell, Isabelle Yarr, Mary Halm, Cecilia MacDonald, Muriel Albert, and John D. Phillips, Superintendent of the Chimacum School. That said teachers and superintendent constitute the majority of the teaching staff of said Chimacum School and that by so discharging and dismissing and failing to re-employ said teachers and superintendent, the system of instruction developed over a long period of years in the Chimacum School was disrupted and destroyed and the value of said school as an educational institution was, and will in the future be, destroyed.''

The first charge (that of giving away property belonging to the district) has heretofore been held to constitute misfeasance in office. *State ex rel. Walter v. Houghton,* 165 Wash. 220, 4 P. (2d) 1110. The demurrer to the first charge was properly overruled.

The facts set out in the third and fourth charges call for a consideration of chapter 179, Laws of 1933, p. 692 (Rem. 1934 Sup., § 10322-11 [P. C. § 5527-4a] *et seq.),* entitled:

''An act relating to the use of Washington state products for fuel by the state, municipalities and po-

litical subdivisions therein, and providing penalty for violation thereof.''

So far as we are here concerned, § 1 of the act provides that no fuel other than that mined or produced in this state shall be used in any building owned or operated by any school district in the state. The enacting clause is followed by three provisos. With the first two we are not concerned. The third reads as follows:

"*Provided,* That the department of business control shall have and exercise full powers of investigation in cases where the advisability of making changes in equipment is questioned. No building, plant, institution or establishment shall be compelled to comply with the provisions of this act if the department of business control, upon its investigation finds the 'cost' of heating by using of state fuels is over five per cent (5%) greater than the 'cost' of heating by the use of out of state fuels. The department of business control may extend the allotted time for making such changes if in its opinion this is believed to be necessary." Rem. 1934 Sup., § 10322-11 [P. C. § 5527-4a].

The second section of the act makes compliance with the act mandatory upon all persons directly or indirectly charged with the duty of purchasing fuel for any such building. Violation of any provision of the act is made a gross misdemeanor, punishable by fine or imprisonment or both.

That the violation, by a public officer, of a penal statute affecting the conduct of his office constitutes malfeasance is not open to debate. *State ex rel. Walter v. Houghton, supra.* The question, therefore, is whether the third and fourth charges state facts constituting a violation of the statute. We fail to see upon what theory they could be held not to constitute a violation of the statute. Certainly they do not come within

the exception of the third proviso. The proviso merely relieves the directors, under the conditions specified, of remodeling a heating plant (designed for the use of out of state fuel only) so that it will burn fuel produced or mined in the state. The appellant is charged with reversing the process. Under the statute, he is clearly guilty of malfeasance if he remodeled a plant, capable of burning fuel produced or mined in the state, so that it would burn only fuel produced out of the state. It is clear that the third charge sets up facts which constitute a violation of the act. Likewise, the fourth charge sets up facts sufficient to constitute malfeasance. Having remodeled the plant so that it would *not* burn state produced fuel, appellant cannot escape, under the terms of the proviso, the consequences of violation of the second section of the act. The demurrers to the third and fourth charges were properly overruled.

The facts set up in the fifth charge are sufficient to constitute misfeasance, under the holding of this court in *Pybus v. Smith,* 80 Wash. 65, 141 Pac. 203, L. R. A. 1915A, 285, Ann. Cas. 1915A, 1145. The court, dealing with facts very similar to those set out in the fifth charge, quoted with approval the following from 9 Cyc. 485:

"A people can have no higher public interest, except the preservation of their liberties, than integrity in the administration of their government in all its departments. It is therefore a principle of the common law that it will not lend its aid to enforce a contract to do an act which tends to corrupt or contaminate, by improper and sinister influences, the integrity of our social or political institutions. Public officers should act from high consideration of public duty, and hence every agreement whose tendency or object is to sully the purity or mislead the judgments of those to whom the high trust is confided is condemned by the courts. The officer may be an executive, administrative, legis-

384

lative, or judicial officer. The principle is the same in either case."

The judgment is affirmed.

MILLARD, C. J., HOLCOMB, MAIN, and STEINERT, JJ., concur.

