10 P.3d 1034 (2000)
141 Wash.2d 756
In re the RECALL OF Cathy PEARSALL-STIPEK, Pierce County Auditor.
No. 68216-0.
Supreme Court of Washington, En Banc.
Argued January 11, 2000.
Decided September 28, 2000.
As Amended October 17, 2000.
*1037 Dale Washam, Puyallup, for Appellant.
John Ladenburg, Pierce County Prosecutor, Roger J. Miener, Deputy Pierce County Prosecutor, Tacoma, for other parties.
Joseph F. Quinn, Lakewood, for Respondent. *1035
*1036 MADSEN, J.
Dale Washam (Washam) has filed a petition to recall Cathy Pearsall-Stipek (Pearsall-Stipek) from her position as Pierce County Auditor, alleging two substantive charges. The first is that Pearsall-Stipek committed perjury or false swearing by misrepresenting her educational background while under oath on three separate occasions. The second is that she failed to fulfill the duties of her office while conducting the 1997 referendum election relating to a new professional football stadium. The Pierce County Superior Court dismissed the petition, finding all charges factually and legally insufficient, and Washam appealed directly to this *1038 court. We find one of Washam's false swearing allegations factually and legally sufficient and, therefore, we reverse on that claim. The trial court is affirmed on all other grounds.

FACTS
On May 18, 1999, Washam[1] filed a recall petition against Pierce County Auditor Cathy Pearsall-Stipek, and on June 4, he filed a supplemental petition. The petition contains two substantive charges. The first is that Pearsall-Stipek committed perjury or false swearing by misrepresenting her educational background on three separate occasions while under oath. The second relates to Pearsall-Stipek's conduct of the 1997 statewide referendum on a new professional football stadium.
The first charge contains three "counts," all relating to Pearsall-Stipek's misrepresentation of her educational background. Pearsall-Stipek did not graduate from college; however, she has misrepresented this fact, claiming she received a degree in 1954 from the University of Washington with a concentration in business administration and home economics.[2] An official statement from the University of Washington Registrar indicates she was "registered for the period 09/50 to 6/52" and that she "did not declare a major and no degree was awarded." Clerk's Papers (CP) at 339.
Counts one and three of charge I relate to a discrimination suit brought in 1994 by Sally Riccobono, a former auditor's employee. The first count of charge I is based on the following interrogatory and answer, which was submitted on May 12, 1994:

Interrogatory No. 4: Describe in full the educational background, including the following, for Cathy Pearsall-Stipek:
a. Name of all institutions attended;
b. Dates of attendance at each institution;
c. Whether she graduated;
d. What course of study was pursued....
Answer to Interrogatory No. 4:
Jefferson Kindergarten  Tacoma, Washington
Jefferson Elementary  Tacoma, Washington
Edison Elementary  Tacoma, Washington
Mason Junior High School  Tacoma, Washington
Stadium High School  Tacoma, Washington
University of Washington, 1954; bachelor's degree, Business Administration; minor, Home Economics. Do not remember grade point average.
CP at 59-60. Pearsall-Stipek did not sign this interrogatory answer. It was signed by her lawyer in the case who attested under oath that he "believe[d]" the answers to be true. CP at 312.
The third count of charge I is based on Pearsall-Stipek's testimony given at trial in the same case, the Riccobono lawsuit. On January 3, 1996, shortly after being sworn in as a witness, the following colloquy occurred between Pearsall-Stipek and defense counsel:
Q: Now, following your graduation from Stadium, did you go on to school?
A: Yes, I went on to the University of Washington.
Q: And did you graduate from the University of Washington?
A: Yes, I did.
Q: And what year was that?
A: 1954.

*1039 Q: And did you  what was your degree in?
A: Business administration and home economics.
CP at 10.
The second count of charge I is based on testimony given in a deposition in a federal civil rights lawsuit brought by Sherry Bockwinkel against Pierce County and Pearsall-Stipek. The lawsuit stemmed from the eviction of Bockwinkel and another person from a county ballot counting facility. On July 3, 1997, Pearsall-Stipek testified to the following:
Q: After graduating from high school, what did you do?
A: I went to the University of Washington.
Q: What years did you attend the University of Washington?
A: '51, '52, '53, and '54.
Q: Did you receive a degree from the university?
A: No.
Q: What was the field of study that you pursued?
A: Home economics and business administration.
CP at 66.
Pearsall-Stipek's testimony in the Bockwinkel deposition is the only statement at issue in this case in which Pearsall-Stipek conceded that she did not earn a degree. In this statement she misrepresented only her years of college attendance. She attended the University of Washington from September, 1950 to June, 1952, not "'51, '52, '53, and '54." CP at 66.
Charge II of Washam's petition concerns Pearsall-Stipek's conduct of the statewide referendum on funding for a new professional football stadium, which was held in 1997. Washam alleges that despite a requirement that the team affiliate (the Seattle Seahawks) pay the full cost of the election, Pearsall-Stipek conducted the entire election in Pierce County by mail-in ballot without charging the team affiliate for return postage on the ballots. According to Washam, Pearsall-Stipek should have provided prepaid return envelopes to the voters and then billed this cost to the team affiliate. By failing to do so, Washam charges that Pearsall-Stipek failed to fulfill the duties of her office.
In response to Washam's petition, the Pierce County prosecutor prepared a ballot synopsis and filed a petition in superior court to determine the sufficiency of the charges and the synopsis. After hearing arguments, the superior court found the charges factually and legally insufficient for submission to the voters. The sufficiency of the synopsis was therefore not addressed. Washam appealed directly to this Court pursuant to RCW 29.82.023 and .160.

ANALYSIS

I
The right to recall elected officials is a right of the people guaranteed by article I, sections 33 and 34 (amendment 8) of the Washington Constitution. In re Recall of Pearsall-Stipek, 136 Wash.2d 255, 262, 961 P.2d 343 (1998). Section 33 contains the substantive right of recall and provides that "[e]very elective public officer of the state of Washington ... is subject to recall and discharge by the legal voters of the state...." Section 34 permits the Legislature to "pass the necessary laws" to carry out section 33. Pursuant to this authority, the Legislature adopted RCW 29.82, which was enacted "to provide the substantive criteria and procedural framework for the recall process." Pearsall-Stipek, 136 Wash.2d at 262-63, 961 P.2d 343.
In 1984, the "Legislature amended RCW 29.82 to provide for judicial review of the sufficiency of recall petitions in order to `free public officials from the harassment of recall elections grounded on frivolous charges or mere insinuations.'" Id. at 263, 961 P.2d 343 (quoting Chandler v. Otto, 103 Wash.2d 268, 274, 693 P.2d 71 (1984)). We perform a limited gate-keeping function in the recall process, using the same reviewing criteria as the superior court. In re Recall of Shipman, 125 Wash.2d 683, 684, 886 P.2d 1127 (1995). Our responsibility is simply to ascertain whether a recall petition meets the threshold standards necessary to proceed to *1040 the signature gathering phase of the recall process. See RCW 29.82.060.
The fundamental requirement is that the charges be factually and legally sufficient. In re Recall of Sandhaus, 134 Wash.2d 662, 668, 953 P.2d 82 (1998). To be factually sufficient, the petition must state in detail the acts complained of, and the petitioner must have knowledge of identifiable facts that support the charges. RCW 29.82.010; Pearsall-Stipek, 136 Wash.2d at 263, 961 P.2d 343. Legal sufficiency requires the charge "state with specificity `"substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office."'" Id. (quoting In re Recall of Wade, 115 Wash.2d 544, 549, 799 P.2d 1179 (1990) (quoting Teaford v. Howard, 104 Wash.2d 580, 584, 707 P.2d 1327 (1985))).
The critical language (misfeasance, malfeasance, or violation of the oath of office) is defined by statute:
(1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
(a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
(b) Additionally, "malfeasance" in office means the commission of an unlawful act;
(2) "Violation of the oath of office" means the wilful neglect or failure by an elective public officer to perform faithfully a duty imposed by law.
RCW 29.82.010. These definitions, as well as the rest of the recall statute, are to be construed in favor of the voter, not the elected official. Pederson v. Moser, 99 Wash.2d 456, 462, 662 P.2d 866 (1983).
The above criteria have been further developed by case law. When an official is "charged with violating the law, the petitioner[] must have knowledge of facts indicating that the official intended to commit an unlawful act." Pearsall-Stipek, 136 Wash.2d at 263, 961 P.2d 343 (citing Sandhaus, 134 Wash.2d at 668, 953 P.2d 82). This means that for the factual sufficiency requirement to be satisfied, the petitioner is required to demonstrate "not only that the official intended to commit the act, but also that the official intended to act unlawfully." Id. at 263, 961 P.2d 343. Additionally, "[o]fficials may not be recalled for their discretionary acts absent manifest abuse of discretion." Id. at 264, 961 P.2d 343. "A legally cognizable justification for an official's conduct renders a recall charge insufficient." Id. While a court should not attempt to determine if the charges are true or false, it may examine whether there is a factual basis to the charges. In re Recall of Anderson, 131 Wash.2d 92, 95, 929 P.2d 410 (1997).
In the first charge of Washam's petition, it is alleged that Pearsall-Stipek committed perjury or false swearing in three separate instances, which he refers to as "counts" of malfeasance. One statement was made in an answer to an interrogatory, another while testifying at trial in the same case, and the last in a separate deposition. In each instance it is alleged that Pearsall-Stipek lied about her educational background while under oath. Such conduct implicates the crimes of first degree perjury and false swearing.
RCW 9A.72.020 defines the crime of perjury in the first degree, which is a class B felony:
(1) A person is guilty of perjury in the first degree if in any official proceeding he makes a materially false statement which he knows to be false under an oath required or authorized by law;
(2) Knowledge of the materiality of the statement is not an element of this crime, and the actor's mistaken belief that his statement was not material is not a defense to a prosecution under this section.
RCW 9A.72.020.
False swearing is a gross misdemeanor, defined by RCW 9A.72.040:
(1) A person is guilty of false swearing if he makes a false statement, which he knows to be false, under an oath required or authorized by law.
*1041 RCW 9A.72.040.[3]
Washam argues that a violation of either of these statutes constitutes malfeasance on the part of Pearsall-Stipek and is grounds for a recall election. Pearsall-Stipek contends, in an argument applicable to all three "counts," that even if she committed perjury or false swearing such illegal activity is not malfeasance or misfeasance, as defined in RCW 29.82.010, because it did not "affect[], interrupt[], or interfere[ ] with the performance of official duty." RCW 29.82.010(1); Br. of Resp't at 17.
Pearsall-Stipek fails to note, however, that this statute also provides that "[a]dditionally, `malfeasance' in office means the commission of an unlawful act." RCW 29.82.010(1)(b). To accept Pearsall-Stipek's position we must find that the Legislature intended the provision [a]dditionally, `malfeasance' in office means the commission of an unlawful act," RCW 29.82.010(1)(b) (emphasis added), to be modified by a separate statutory clause that broadly defines "`[m]isfeasance' or `malfeasance' in office [as] any wrongful conduct that affects, interrupts, or interferes with the performance of official duty." RCW 29.82.010(1).
"`When the words in a statute are clear and unequivocal, this court is required to assume the Legislature meant exactly what it said and apply the statute as written.'" In re Custody of Smith, 137 Wash.2d 1, 8, 969 P.2d 21 (1998) (quoting Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997)). We further recognize that "[t]he drafters of legislation ... are presumed to have used no superfluous words and we must accord meaning, if possible, to every word in a statute...." Greenwood v. Department of Motor Vehicles, 13 Wash.App. 624, 628, 536 P.2d 644 (1975). The meaning of the term "additionally"
is very well understood by people generally, as being something that is added to or put onto a thing already in existence. It embraces the idea of joining or uniting one thing to another so as to form an aggregate; but it has also been said that the word does not serve to amalgamate two things to which it is applied into a single whole but rather relates to them as separate entities.
Ex parte Boddie, 200 S.C. 379, 21 S.E.2d 4, 8 (1942).
Applying these principles to RCW 29.82.010(1), "wrongful conduct," whether illegal or not, "that affects, interrupts, or interferes with the performance of official duty" may constitute "misfeasance or malfeasance." However, "[a]dditionally, malfeasance in office means the commission of an unlawful act." RCW 29.82.010(1)(b) (emphasis added). These are distinct statutory definitions.[4]
*1042 Indeed, any construction that links these two provisions together would render RCW 29.82.010(1)(b) wholly unnecessary. Any "unlawful act" is clearly "wrongful conduct." If the commission of an unlawful act were required to "affect[], interrupt[], or interfere[] with the performance of official duty" the conduct specified under RCW 29.82.010(1)(b) ("unlawful act") would already be encompassed by RCW 29.82.010(1), the provision relating to "wrongful conduct." RCW 29.82.010(1). We are not so quick to assume redundancy on the part of our Legislature. The Legislature "does not engage in unnecessary or meaningless acts, and we presume some significant purpose or objective in every legislative enactment." John H. Sellen Constr. Co. v. Department of Revenue, 87 Wash.2d 878, 883, 558 P.2d 1342 (1976).
Thus, we conclude that the only statutory and Constitutional requirement relating to an "unlawful act" is that it be "in office." Here, Pearsall-Stipek is accused of committing perjury or false swearing in the context of her official duties as auditor. Each statement was made in a lawsuit brought against the Pierce County Auditor's office or Pearsall-Stipek in her capacity as auditor. Given the allegations presented in this case, we need not determine whether the phrase "in office" contemplates only acts committed by a public officer in their official capacity, or whether it might include private acts committed outside of an officer's official duties, committed during their term of office. See Dissent at 1053, n. 1.
Contrary to the rhetoric contained in Justice Talmadge's dissent, our interpretation of RCW 29.82.010 does not mean that every "illegal act" of a public officer will culminate in a recall election. Dependent upon the office and location, a recall petitioner must obtain the signatures of 25 or 35 percent of the total number of votes cast in the prior election to initiate a recall election. See RCW 29.82.060. The right of recall is guaranteed to the citizens of this State, and it is for the people to decide if an "illegal act" is of sufficient severity to warrant a recall election. This is a duty wisely entrusted by the Constitution to our citizens, not this court. There may be members of this court who would refrain from signing a recall petition based upon some minor "illegal act" committed by an elected officer, yet the majority of us are unwilling to deny this right to the very people we are entrusted to serve.[5]
Turning to the first "count," Washam alleges that Pearsall-Stipek committed perjury or false swearing by stating in a July *1043 18, 1994, interrogatory answer that she graduated from the University of Washington with a bachelor's degree in business administration and a minor in home economics. CP at 59-60. This false statement was made in the context of an employment discrimination suit filed by a former auditor's employee, Sally Riccobono.
Washam has failed to show that this statement constitutes either perjury or false swearing because to constitute either unlawful act the statement must be made under oath by Pearsall-Stipek. The only person who signed the interrogatory answer was Pearsall-Stipek's attorney. Counsel presented the following declaration, made before a notary public, along with the interrogatory answer:
Jack F. Nevin, being first duly sworn, on oath, deposes and says:
That he is the attorney for defendant, above-named; that he has read the foregoing answers to interrogatories; knows the contents thereof; and believes the same to be true.
 /s/ Jack F. Nevin
CP at 312.
Pearsall-Stipek, in an affidavit, maintains that she did not play a role in the untruthful interrogatory answer, stating:
I was enrolled in a bachelor's degree program in Business Administration; the attorney may have assumed I graduated but I did not sign any answer to interrogatory saying that I received such a degree.
CP at 197.
Washam, who is not an attorney, appears to argue that the interrogatory answer signed by counsel should be imputed to Pearsall-Stipek as her sworn statement made under oath. He offers no legal basis for such a finding. In fact, not even counsel attested to the accuracy of the interrogatory answers, only to his "belief" that they were true. As such, we hold that count one of charge I is legally insufficient.
The statements involved in the other two "counts" took place during testimony given by Pearsall-Stipek while under oath, one at a trial and the other at a deposition. In the Riccobono trial, Pearsall-Stipek untruthfully stated that she graduated from the University of Washington in 1954 with a degree in business administration and home economics. In her deposition in the Bockwinkel case, Pearsall-Stipek admitted that she had not received a degree, but claimed she had attended the University of Washington from 1951 to 1954. She only attended from September, 1950 to June, 1952. Both of the above statements occurred during preliminary questioning regarding Pearsall-Stipek's background.
A charge of perjury in the first degree requires that the untruthful statement be made in the course of an "official proceeding" and that the statement be "material." It is undisputed that Pearsall-Stipek's statements occurred during an official proceeding. See RCW 9A.72.010(4). Therefore, the principal issue is whether the statements were material. A statement is material if it "could have affected the course or outcome of the proceeding...." RCW 9A.72.010(1).
With respect to the Bockwinkel deposition, in which Pearsall-Stipek misrepresented only her years of attendance at the University of Washington, it is quite clear that this falsehood was not a material statement. The deposition was not introduced at trial and could not have "affected the course or outcome of the proceeding." RCW 9A.72.010(1).
The Riccobono case was a discrimination suit brought by a former auditor's employee, while the Bockwinkel case was a civil rights lawsuit arising from the ejection of two persons from the county's ballot-counting facility. Washam contends, in his recall petition, that Pearsall-Stipek's educational background was a material issue in these cases because her "leadership abilities [were] in question in the ... lawsuit[s], and her formal education is a material issue in regards to her qualifications." CP at 19. Washam presents no facts to support this contention. In fact, two attorneys involved in the lawsuits have submitted affidavits stating that Pearsall-Stipek's educational background was not material to either of the suits. CP at 190-93; see also Riccobono v. Pierce County, 92 Wash.App. 254, 966 P.2d 327 (1998).
*1044 Washam also contends that Pearsall-Stipek's untruthful claim that she received a college degree was material in the Riccobono case because it bolstered her credibility before the jury. Issues affecting credibility can be material matters, if the witness testifies regarding material issues in a case. As we noted in State v. Carpenter:
"The matter sworn to need not be directly and immediately material. It is sufficient if it be so connected with the fact directly in issue as to have a legitimate tendency to prove or disprove such fact by giving weight or probability to the testimony of a witness testifying thereto, or otherwise.
Perjury may be assigned upon false statements affecting only a collateral issue, as the credit of a witness, this being material to the main issue.... But perjury cannot be assigned on the testimony of a witness on cross-examination affecting only his credit, where his evidence on direct examination was immaterial."
State v. Carpenter, 130 Wash. 23, 26-27, 225 P. 654 (1924), quoted in State v. Daniels, 10 Wash.App. 780, 781, 520 P.2d 178 (1974).
Pearsall-Stipek argues that credibility cannot be a material issue because "if witness credibility is always material, then the materiality requirement is meaningless. All testimony would be material." Br. of Resp't at 18. Pearsall-Stipek has misconstrued Washam's argument. Washam is not arguing that credibility is always material, but rather that credibility can be material when a witness is testifying to material matters. Washam's contention is in line with our statement in Carpenter.
It is unclear whether Pearsall-Stipek testified as to a material issue in the Riccobono trial. She was the first defense witness called in a discrimination lawsuit, so it is possible that she did testify regarding such matters. However, Washam has not supplied a trial transcript (other than a small excerpted portion of testimony), so an assessment of this issue is impossible. Based on the record, we cannot determine whether Pearsall-Stipek's testimony "could have affected the course or outcome of the proceeding." RCW 9A.72.010(1). For this reason, we hold that Washam's petition is legally insufficient to support a charge of perjury in the first degree.
Even though we find that Washam has failed to demonstrate that the statements in counts two and three were material, and thus these charges are legally insufficient for a charge of perjury, we nonetheless find that these same statements do support a charge of false swearing. Pearsall-Stipek contends, however, that the false swearing statute implicitly requires an element of materiality, even though the statute, by its terms, makes no mention of the point. Pearsall-Stipek cites RCW 9A.72.050 as evidence of legislative intent in this regard. That statute provides:
(1) Where, in the course of one or more official proceedings, a person makes inconsistent material statements under oath, the prosecution may proceed by setting forth the inconsistent statements in a single count alleging in the alternative that one or the other was false and known by the defendant to be false. In such case it shall not be necessary for the prosecution to prove which material statement was false but only that one or the other was false and known by the defendant to be false.
(2) The highest offense of which a person may be convicted in such an instance as set forth in subsection (1) of this section shall be determined by hypothetically assuming each statement to be false. If perjury of different degrees would be established by the making of the two statements, the person may only be convicted of the lesser degree. If perjury or false swearing would be established by the making of the two statements, the person may only be convicted of false swearing.
RCW 9A.72.050(1),(2).
Pearsall-Stipek reasons that because subsection (1) requires two or more "material" statements to be alleged, and subsection (2) speaks of false swearing, false swearing must require an element of materiality.
We find this argument unpersuasive. In assessing legislative intent, we look first to the language of the statute. In re Custody of Smith, 137 Wash.2d 1, 8, 969 P.2d 21 (1998). The false swearing statute makes no *1045 mention of materiality. In fact, it is evident that the Legislature was aware of how to make materiality an element of a crime, as they did with perjury, yet they omitted the term from the false swearing statute. See State v. Jackson, 137 Wash.2d 712, 723, 976 P.2d 1229 (1999) (fact that Legislature in several statutes has made omission to act a crime but did not include omissions in the accomplice liability statute means the Legislature deliberately chose not to make failure to act a basis for accomplice liability). RCW 9A.72.050 is not inconsistent with this interpretation. The statute simply provides that the State may charge successive false statements that are alleged to be material, but if it fails to prove that one of the statements is material, then the defendant may be convicted only of false swearing.
Pearsall-Stipek also relies on State v. Jacobson, 74 Wash.App. 715, 876 P.2d 916 (1994). In Jacobson, the Court of Appeals held that a charge of "[f]alse swearing does not require the statement to have been made in an official proceeding." Id. at 726, 876 P.2d 916. In that case, where materiality was not at issue, the court held that an affidavit given in aid of a judicial proceeding comes within the definition of "official proceeding." RCW 9A.72.050. Pearsall-Stipek argues that Jacobson stands for the proposition that the requirement of an "official proceeding" is the only distinction between perjury and false swearing. Id. Contrary to Pearsall-Stipek's assertion, Jacobson did not even suggest such a point.
The unambiguous language of the false swearing statute leads us to conclude it does not contain a materiality requirement. In his dissent, Justice Talmadge does not dispute this point. Nevertheless, even though the argument has not been raised by either party, the dissent concludes the false swearing statute is only applicable to circumstances other than "official proceedings."
We believe this interpretation to be untenable. First, and most significantly, the false swearing statute itself contains no such limitation. See Multicare Med. Ctr. v. Department of Soc. & Health Servs., 114 Wash.2d 572, 582, 790 P.2d 124 (1990). Second, this construction would yield unlikely results. When the Legislature added the crime of false swearing, it also expanded the definition of "official proceeding" to include:
a proceeding heard before any legislative, judicial, administrative, or other government agency or official authorized to hear evidence under oath, including any referee, hearing examiner, commissioner, notary, or other person taking testimony or depositions....
Laws of 1975, 1st Ex.Sess., ch. 260, at 849; RCW 9A.72.010(4).
This definition contemplates not only in court statements subject to attack by an adversary, but also statements made in nonadversarial settings. In the latter instance, the statement's truth will often go unchallenged.
Under the construction advanced in Justice Talmadge's dissent, a misstatement made in an "official proceeding" is punishable by law only if "material." But all misstatements, material and nonmaterial, would be false swearing if made in any setting other than an official proceeding. The flaw in this construction is obvious. An affiant would be free to lie about nonmaterial matters in a sworn affidavit submitted to a judge. See Jacobson, 74 Wash.App. at 725, 876 P.2d 916 (official proceeding includes written documents submitted in aid of an official proceeding). However, a person could be criminally punished for all misstatements, no matter how insignificant, if made under an oath authorized by law in any setting other than an official proceeding, such as in an application for a state license. See RCW 18.210.120(1) (water treatment designer license application "must contain statements, made under oath, demonstrating the applicant's education and work experience.").
The dissent opines that "we cannot condone lying under oath by any witness," but at the same time would grant witnesses the right to lie with impunity about nonmaterial matters in a courtroom. Dissent (Talmadge, J.) at 1051. Our respect for the judicial system runs too deep, and our appreciation *1046 of the risks apparent in such a rule are too acute, to adopt such a construction.[6]
State v. Wilson, 83 Wash. 419, 145 P. 455 (1915), does little to support the position taken by the dissent. In Wilson, this Court construed the former second degree perjury statute as limited to statements made in extra-judicial proceedings. The Wilson court reasoned that absent some limitation, the second degree perjury statute (similar to the current false swearing statute) would serve no purpose, as both it and the first-degree perjury statute could be applied to the same "state of facts." Id. at 423, 145 P. 455. The court rejected an argument that the second degree perjury statute could still be applied to immaterial statements made in judicial proceedings, noting that it is no defense "for perjury in the first degree that the defendant did not know the materiality of his false statement, if it was indeed material and might have affected such proceeding." Id. at 425, 145 P. 455.
The Wilson court assumed materiality was an element of both first and second degree perjury under the former statutes. This assumption was well founded, for at common law, the term "perjury" included only material misstatements. Id. at 421, 145 P. 455. In 1975, the Legislature created a new crime in Washington, "false swearing," and did not include an "official proceeding" or "materiality" requirement in the statute. These considerations lead us to conclude that the proper construction of the current false swearing statute is to treat it as a lesser included offense of first degree perjury. See State v. Devitt, 82 Wis.2d 262, 272, 262 N.W.2d 73, 78 (1978) ("while false swearing alone cannot be perjury, perjury can be false swearing"). At least two Washington commentators have endorsed the view we adopt today:
Although knowledge of materiality is never an element, materiality is an element of perjury, although not of false swearing. In accordance with its plain language, the false swearing statute should be applied to all knowingly false statements under oath, whether made in or out of official proceedings, whenever these statements do not fit the definition of perjury.
13A Seth A. Fine & Douglas J. Ende, Washington Practice: Criminal Law § 1905, at 399 (1998). Considering the significant differences between the 1915 second-degree perjury statute and the current false swearing statute, we conclude that Wilson has no application to this case.[7]
*1047 In finding Washam's recall petition insufficient, the superior court relied in part on RCW 9A.72.060, the perjury or false swearing retraction statute, which states:
No person shall be convicted of perjury or false swearing if he retracts his false statement in the course of the same proceeding in which it was made, if in fact he does so before it becomes manifest that the falsification is or will be exposed and before the falsification substantially affects the proceeding. Statements made in separate hearings at separate stages of the same trial, administrative, or other official proceeding shall be treated as if made in the course of the same proceeding.
RCW 9A.72.060.
The superior court's rationale was that Pearsall-Stipek's statement in the Bockwinkel depositionthat she did not receive a degree from the University of Washington served as a retraction of her statement that she did receive a degree, which was given in the Riccobono trial a year and a half earlier. As noted before, in the Bockwinkel deposition Pearsall-Stipek was only untruthful about her years of attendance, not whether she had earned a degree. The superior court misapplied RCW 9A.72.060. The two statements were made in separate proceedings, which were not part of the same trial.
Even though we find that Washam's petition is legally sufficient to show Pearsall-Stipek committed false swearing in two instances, for the factually sufficient requirement to be satisfied Washam must additionally show that Pearsall-Stipek intended her actions, and that she specifically intended to violate the law. Pearsall-Stipek, 136 Wash.2d at 263, 961 P.2d 343. We are not persuaded that the testimony in the Bockwinkel deposition satisfies the test for factual sufficiency. During this testimony, Pearsall-Stipek conceded that she had not earned a college degree. She merely stated that she had attended the University of Washington in "'51, '52, '53, and '54," when in fact she had attended from September 1950 to June 1952. CP at 66. This misstatement, which omitted one of the years, 1950, that Pearsall-Stipek actually attended the University of Washington bears the mark of simple mistake and is insufficient to show that Pearsall-Stipek "intended to violate the law...." In re Sandhaus, 134 Wash.2d at 670, 953 P.2d 82.
Nevertheless, we do believe there is sufficient evidence by which to infer intent on the part of Pearsall-Stipek to commit false swearing in the Riccobono trial and we therefore hold that this charge is factually sufficient. Id. at 671, 953 P.2d 82 ("willfulness [in violating RCW 36.40.130] can probably be found in evidence showing that [the prosecutor] knew he was overspending and did so even after the Board and the auditor warned him against doing so.") In the Riccobono trial Pearsall-Stipek was administered an oath at page one of the trial transcript. Her untruthful statements appear at page two. During her testimony she claimed to have received a college degree, when in fact, she had not. Pearsall-Stipek was untruthful only a short moment after the oath reminding her of her legal obligation to tell the truth was administered.
Pearsall-Stipek's final contention is that Washam's petition should fail on grounds of "staleness." Specifically, Pearsall-Stipek argues that because the voters of Pierce County were already aware that she had misrepresented her educational background when they reelected her on November 3, 1998, the petition should fail. The Tacoma News Tribune published an article exposing Pearsall-Stipek's misrepresentations regarding her educational background on October 30, 1998, five days prior to her reelection.
In Janovich v. Herron, 91 Wash.2d 767, 592 P.2d 1096 (1979), we held that "the constitutional and statutory provisions ... recognizing in the people a broad right to recall their elected officials, contemplate that officials may be recalled for misconduct during *1048 a prior term of office." Id. at 776, 592 P.2d 1096. In Janovich the conduct at issue was not made public until after the reelection of the official had occurred. We expanded Janovich's holding in Pederson v. Moser, 99 Wash.2d 456, 662 P.2d 866 (1983), holding that "[r]ecall may be based on misconduct in a prior term of office whether or not the misconduct is public knowledge at the time of reelection." Id. at 464, 662 P.2d 866. Underlying our decision in Pederson was the fact that an opposite holding "would regularly enmesh the courts in factual linedrawing as to just what constitutes `public knowledge' of prior misconduct." Id. As we noted, "[i]n other contexts we have studiously avoided such involvement ... and we do so here." Id. (citing State ex rel. Citizens Against Mandatory Bussing v. Brooks, 80 Wash.2d 121, 124, 492 P.2d 536 (1972) overruled on other grounds by Cole v. Webster, 103 Wash.2d 280, 692 P.2d 799 (1984)).
Several facts in this case aptly illustrate the difficulty of "factual line-drawing," which was of concern to us in Pederson. Pederson, 99 Wash.2d at 464, 662 P.2d 866. First, the Tacoma News Tribune article exposing Pearsall-Stipek's lack of candor was published on October 30, 1998, only a few days prior to the November 3, 1998, election. It is difficult to infer a broad awareness of Pearsall-Stipek's conduct on the part of voters within this limited time frame. Second, and most importantly, the October 30, 1998, article does not state that Pearsall-Stipek's untruthful statements were made while under oath. Even if the voters were aware of Pearsall-Stipek's misrepresentations about her educational background, it is very unlikely they were aware she had lied under oath about the topic.
The Tacoma News Tribune article did make extremely vague references to the fact that Pearsall-Stipek may have lied in court proceedings, stating in part:
The true extent of her college education was unraveled Wednesday and Thursday in a series of interviews and through examination of court records and of her transcript on file at the UW.
....
Bockwinkel provided the paper with a copy of a year-old deposition in which the auditor testified that she had no degree but had attended the UW from 1951 to 1954.
CP at 99, ex. 4.
Of course, the above statements only show that Pearsall-Stipek lied about her years of attendance in the Bockwinkel deposition, not that she lied under oath about receiving a college degree (i.e., in the Riccobono trial).
And finally, a portion of the ballots (mail-in) had likely been received by October 30, 1998, the day the Tacoma News Tribune story was published. Obviously voters mailing their ballots in by that time would have been unaware of the newspaper article reporting Pearsall-Stipek's misrepresentations.[8] In fact, Pearsall-Stipek, in her campaign literature, claims to have succeeded "in increasing voter turn-out from 24 percent to 76 percent with over 54 percent voting by mail." CP at 106.
By her testimony in the Riccobono trial, Pearsall-Stipek violated the false swearing statute and this "unlawful act" constitutes malfeasance under RCW 29.82.010(1)(b), providing an adequate legal basis for a recall charge. We hold that the third count of charge I (the testimony in the Riccobono trial) is factually and legally sufficient for submission to the voters. Counts one and two are insufficient.

II
Charge II of Washam's recall petition concerns the manner in which Pearsall-Stipek conducted the June 1997 vote on the statewide referendum for a new professional football stadium. Pearsall-Stipek conducted the election in Pierce County entirely by mail, with voters supplying postage for the return of ballots. Washam charges that *1049 Pearsall-Stipek should have provided voters with postage prepaid return envelopes and charged the cost to "team affiliate", the advocate of the new stadium. Washam bases this argument on the legislation authorizing the referendum, which provided that the legislation will be null and void unless the team affiliate "enter[ed] into an agreement with the secretary of state to reimburse the state and the counties for the full cost of the special election[....]" Laws of 1997, ch. 220, § 606 (emphasis added). Washam argues that the "full cost" of the special election includes those costs absorbed by the voters of Pierce County in having to provide postage to return their ballots.
Charge II of Washam's petition fails on grounds of legal insufficiency, as the petition does not show that Pearsall-Stipek had a duty to provide postage prepaid return envelopes with the ballots. The authorizing legislation required reimbursement of the "counties" for the cost of the election. Washam presents no authority suggesting that the individual voters' costs constituted a cost to the "county." The legislation specifically authorized county auditors to conduct the election by mail utilizing the procedures set forth in RCW 29.36.121 through 29.36.139. Laws of 1997, ch. 220, § 607(4). None of the listed provisions require county auditors to supply postage prepaid return envelopes for mail in ballots. The only statute that refers to postage is RCW 29.36.045, which deals with absentee ballots. The statute directs auditors to instruct voters to physically return absentee ballots to the auditor "or attach sufficient first class postage, if applicable, and mail the ballot to the appropriate county auditor[....]" RCW 29.36.045. Auditors may provide postage prepaid return envelopes to voters in elections, but there is nothing requiring them to do so. Indeed, Pearsall-Stipek has submitted undisputed evidence that 27 county auditors, out of 30 surveyed, did not provide return postage for their mail-in ballots in the 1997 referendum election. CP at 217-48.
The decision not to provide postage prepaid return envelopes was thus a reasonable discretionary act on the part of Pearsall-Stipek. It is well settled that "[o]fficials may not be recalled for their discretionary acts absent manifest abuse of discretion." Pearsall-Stipek, 136 Wash.2d at 264, 961 P.2d 343. We hold that charge II of Washam's petition is legally insufficient.

III
Pearsall-Stipek has requested attorney fees pursuant to CR 11. In Pearsall-Stipek we held that a recall petitioner should not be made to pay an elected official's attorney fees merely because the petitioner has brought a "frivolous recall petition." Pearsall-Stipek, 136 Wash.2d at 266, 961 P.2d 343 ("potential chilling effect could undermine the Legislature's intent that citizens be able to freely initiate recall efforts.") However, we also held that under our inherent equitable powers and CR 11 "attorney fees may be awarded against a petitioner who brings a recall petition in bad faith." Id. at 267, 961 P.2d 343. Bad faith in this context refers to "intentionally frivolous recall petitions brought for the purpose of harassment." Id. at 266, 961 P.2d 343. Regardless of Washam's motives, which are not known, his petition is not frivolous. It is based in part on undisputed charges of false testimony given by Pearsall-Stipek while under oath, one of which we have found to be factually and legally sufficient. Pearsall-Stipek's request for attorney fees is denied.

CONCLUSION
We affirm the superior court with respect to counts one and two of charge I (Riccobono interrogatory and Bockwinkel deposition), as well as charge II (referendum election), holding that these claims fail to meet the test of factual and legal sufficiency. We reverse as to count three of charge I (Riccobono trial), holding that this charge is factually and legally sufficient. Accordingly, this matter is remanded to the superior court for further proceedings consistent with this opinion. See RCW 29.82.060 (25 percent of total number of votes cast for the position in the preceding election). Pearsall-Stipek's request for attorney fees is denied.
*1050 Guy, C.J., SMITH, ALEXANDER, SANDERS, IRELAND, BRIDGE, JJ., concur.
JOHNSON, J. (dissenting).
I agree with the majority that lying under oath, even as to immaterial issues, is a serious matter that will not be condoned by the courts of this state. I disagree, however, with the majority's conclusion that any misrepresentation under oath, no matter how immaterial, rises to the level of "`substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office.'" In re Recall of Sandhaus, 134 Wash.2d 662, 668, 953 P.2d 82 (1998) (emphasis added) (quoting In re Recall of Shipman, 125 Wash.2d 683, 685, 886 P.2d 1127 (1995)).
The history of the right of recall in this state and the legislative history of the current recall statute, RCW 29.82.010, reveal that the "malfeasance" prong of that statute was never intended to apply to conduct, albeit unlawful, that does not impact the performance of the public official's duties. Because Cathy Pearsall-Stipek's allegedly unlawful conduct in this case did not interfere in any way with the performance of her duties as Pierce County Auditor, a proper reading of the statute and our cases requires us to affirm the superior court's dismissal of the petition.
The Washington State Constitution was amended in 1912 to codify the right of recall. See Laws of 1911, ch. 108, § 1; Wash. Const. art. I, § 33 (amend.8); see also Lynden D. Rasmussen, Recent Decisions, Sufficiency of Charges to Support a Recall Election  State ex rel. Citizens Against Mandatory Bussing v. Brooks, 80 Wash.2d 121, 492 P.2d 536 (1972), 8 Gonz. L.Rev. 131, 132-33 (1972). Nevertheless, the constitutional amendment narrowed the right to allow recall only for cause rather than recall at will. See generally Bocek v. Bayley, 81 Wash.2d 831, 835, 505 P.2d 814 (1973), overruled on other grounds by Cole v. Webster, 103 Wash.2d 280, 692 P.2d 799 (1984); Michael L. Cohen, Recall in Washington: A Time for Reform, 50 Wash. L.Rev. 29, 36-37 (1974). Specifically, officers could be subjected to a recall election only for "malfeasance or misfeasance while in office" or by violating their oath of office. Wash. Const. art. I, § 33 (amend.8). This terminology was similar to the language of the constitution's judicial impeachment provision. Wash. Const. art. V, § 3. In 1913, the Legislature enacted statutory provisions to effectuate the recall amendment. Laws of 1913, ch. 146, § 1.
This original statute left the term "malfeasance" undefined. See Laws of 1913, ch. 146, § 1. Nonetheless, this court made clear in a series of decisions to follow that the term "malfeasance" contemplated a nexus between the alleged wrongful conduct and the official duties of the party subject to recall. In State ex rel. Nisbet v. Coulter, 182 Wash. 377, 47 P.2d 668 (1935), the court noted "[t]hat the violation, by a public officer, of a penal statute affecting the conduct of his office constitutes malfeasance is not open to debate." Nisbet, 182 Wash. at 382, 47 P.2d 668 (emphasis added).
Four years later, in a recall action against the mayor of the City of Bremerton, it was alleged before this court that a charge of malfeasance was unfounded because the criminal act at issue "did not affect the performance on his part of the duties of mayor." State ex rel. Knabb v. Frater, 198 Wash. 675, 678, 89 P.2d 1046 (1939). We rejected the argument because the case involved a conspiracy to operate illegal gambling operations within the city, a criminal act sufficiently related to the mayor's official duties. Knabb, 198 Wash. at 679, 89 P.2d 1046. Nonetheless, we accepted as authoritative the following rule of law regarding malfeasance:
"Where the constitution or a statute authorizes a removal for official misconduct, or misfeasance, misconduct, or maladministration in office, or similar acts of misbehavior in office, the general rule is, that the officer can be removed only for acts or omissions relating to the performance of his official duties, not for those which affect his general moral character, or his conduct as a man of business, apart from his conduct as an officer. In such a case, as a learned judge has remarked, it is necessary `to separate the character of the *1051 man, from the character of the officer....'"
Knabb, 198 Wash. at 679, 89 P.2d 1046 (quoting Montgomery H. Throop, A Treatise on the Law Relating to Public Officers and Sureties in Official Bonds § 367 (1892) (quoting Commonwealth v. Chambers, 24 Ky. (1 J.J. Marsh.) 108, 160 (1829) (Underwood, J., concurring))). In subsequent recall cases, this court generally referred to "malfeasance" as "any wrongful conduct that affects, interrupts, or interferes with the performance of official duty." Danielson v. Faymonville, 72 Wash.2d 854, 859, 435 P.2d 963 (1967), overruled on other grounds by Cole, 103 Wash.2d 280, 692 P.2d 799; see also State ex rel. LaMon v. Town of Westport, 73 Wash.2d 255, 259, 438 P.2d 200 (1968), overruled on other grounds by Cole, 103 Wash.2d 280, 692 P.2d 799.
In 1984, the Legislature amended the recall statute and included a definition of "malfeasance." Laws of 1984, ch. 170, § 1; RCW 29.82.010(1). The amended statute defined "malfeasance" as "any wrongful conduct that affects, interrupts, or interferes with the performance of official duty...." RCW 29.82.010(1). The same prong of the statute further states: "[a]dditionally, `malfeasance' in office means the commission of an unlawful act...." RCW 29.82.010(1)(b). Although a reading of this addendum could lead one to believe any unlawful act may be grounds for recall, the amendment's legislative history reveals a contrary intent.
The statutory definition of "malfeasance" derives from the House of Representatives' amendment to the original Senate bill. See H.B. Rep. (S.S.B.3984), 48th Leg., Reg. Sess. (Wash.1984) (hereinafter "House Bill Report"). The House Bill Report describes the relevant portion of the amendment as follows: "Alters the definitions of `misfeasance' and `malfeasance' in office and applies these terms to any wrongful conduct that affects the performance of official duty. References to duties being statutorily imposed and unlawful acts being wilfully committed are deleted." House Bill Report at 3 (emphasis added). It is apparent from these statements that the statute was never intended to extend the definition of "malfeasance" beyond illegal acts that affect the performance of the public official's duties. The language of RCW 29.82.010(1)(b) is still subject to the general requirement that the illegal act be of the type that "affects, interrupts, or interferes with the performance of official duty...." RCW 29.82.010(1).
This requirement is not satisfied in the present case. Pearsall-Stipek was testifying in the Riccobono lawsuit in her capacity as Auditor. Yet, the alleged illegality was not Pearsall-Stipek's appearance in the courtroom, but the substance of the testimony regarding her educational background. The affidavit of the attorney for Pierce County in the Riccobono lawsuit establishes that Pearsall-Stipek's personal background had absolutely nothing to do with the facts or relevant legal issues presented in that case. I can envision no manner in which this testimony "affects, interrupts, or interferes with the performance of [Pearsall-Stipek's] official duty...." RCW 29.82.010(1).
This construction of the statute logically excludes as a basis for recall circumstances where a public official misrepresents under oath his or her age or weight, or is simply impeached based on other matters completely immaterial to the proceedings. See RCW 9A.72.040. In such circumstances, the prosecutor may file charges of false swearing and, should those charges be proven beyond a reasonable doubt, the violator would be found guilty of a gross misdemeanor. This fact alone, however, is insufficient to recall an elected official of this state.
The superior court, therefore, correctly dismissed the petition and its decision should be affirmed.
TALMADGE, J. (dissenting).
I agree with the majority we cannot condone lying under oath by any witness, whether an ordinary citizen, Pierce County Auditor, a Justice of the Supreme Court, or President of the United States, but our task here is more limited than merely expressing our condemnation of lying under oath. Thus, we must discern here whether Cathy Pearsall-Stipek's statements under oath constitute statutory misfeasance or malfeasance, subjecting her to recall pursuant to article I, *1052 sections 33 and 34 (amend.8), of the Washington Constitution and RCW 29.82.010.
I concur in the majority's disposition of Charge 2 against Pearsall-Stipek, relating to her conduct during the 1997 statewide referendum. However, I disagree with the majority's treatment of Charge 1 against Pearsall-Stipek, which relates to Pearsall-Stipek's misrepresentation of her educational background.
The majority creates a rule for the recall of elected officials that is vastly more encompassing than the Legislature could have possibly intended or that comports with ordinary common sense. The majority holds malfeasance in office, sufficient to subject an elected official to a recall election, can result from any unlawful act, regardless of whether the unlawful act affected, interrupted, or interfered with the performance of official duties. In this case, the unlawful act was false swearing, serious business indeed. But there is nothing in the majority's approach to prevent the Dale Washams of the world from bringing a recall action against an elected official for committing any traffic infraction (an unlawful act); for expectorating on a bus, see RCW 9.91.025(1)(d) (unlawful bus conduct); or for leading a dog on a bike path, see RCW 35.75.020 (use of bike paths for other purposes prohibited).
Some may consider the foregoing heinous infractions, rendering one unsuitable to hold public office, but most would not. Most, including the Legislature, would also think it foolish and wasteful to conduct a recall election for matters not connected to the performance of official duties. General considerations of character and morality are, of course, important themes for the electorate. But such matters should be decided in the ordinary electoral process, not in extraordinary recall elections generated by those with personal animus against an elected official. Government could hardly go on if we required an elected official to stand for a recall election every time he or she committed a traffic infraction. Indeed, I served in the state senate in 1981 when a recall election completely disrupted the operation of that body.
Our task is to decide whether the false swearing that allegedly occurred in this case is prohibited activity described in the recall statute. The recall statute permits recall for misfeasance, malfeasance, or violation of the oath of office, and defines those terms:
(1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
(a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
(b) Additionally, "malfeasance" in office means the commission of an unlawful act;
(2) "Violation of the oath of office" means the wilful neglect or failure by an elective public officer to perform faithfully a duty imposed by law.
RCW 29.82.010. The precise issue is whether the phrase "affects, interrupts, or interferes with the performance of official duty" applies to the phrase "commission of an unlawful act." In other words, if the elected official commits an unlawful act, must that act affect, interrupt, or interfere with the performance of his or her official duty in order for a recall petition to lie. As noted above, the majority concludes it does not, that any unlawful act is enough to support a recall petition, whether or not the unlawful act related to official duties. Standard statutory construction demonstrates the majority's conclusion cannot possibly be correct.
The majority attempts to construe the recall statute at pages 1041-1042 of its opinion. Absent from the majority's discussion is reference to the first canon of statutory construction: "The primary goal in statutory interpretation is to ascertain and give effect to the intent of the Legislature." National Elec. Contractors Ass'n, Cascade Chapter v. Riveland, 138 Wash.2d 9, 19, 978 P.2d 481 (1999).
In fact, legislative intent is so important we have held "`a fundamental guide to statutory construction is that the spirit or intention of the law prevails over the letter of the law.'" Janovich v. Herron, 91 Wash.2d 767, 772, 592 P.2d 1096 (1979) (quoting State v. Dan J. Evans Campaign Comm., 86 Wash.2d 503, 508, 546 P.2d 75 (1976)).
*1053 Interpreting the recall statute in a way that would carry out the intent of the Legislature presents an awkward problem for the majority. As Justice Johnson has ably demonstrated in his dissent, the common law history of recall in Washington has required a nexus between a wrongful or illegal act and performance of official duties. See Johnson dissent at 1050-1051. When the Legislature amended the recall statute in 1984,[1] thereby codifying the common law,[2] it copied the language of one of our cases, Danielson v. Faymonville, 72 Wash.2d 854, 859, 435 P.2d 963 (1967), overruled on other grounds by Cole v. Webster, 103 Wash.2d 280, 692 P.2d 799 (1984), where we said: "Misfeasance or malfeasance (often stated as maladministration, misconduct, official misconduct, nonfeasance, or misbehavior in office), have been held to be comprehensive terms and include any wrongful conduct that affects, interrupts, or interferes with the performance of official duty." (Emphasis added.) Our cases have held as much without interruption at least since 1939.
In State ex rel. Knabb v. Frater, 198 Wash. 675, 679, 89 P.2d 1046 (1939), we quoted with approval a nineteenth century treatise on public officers:
"Where the constitution or a statute authorizes a removal for official misconduct, or malfeasance, misconduct, or maladministration in office, or similar acts of misbehavior in office, the general rule is, that the officer can be removed only for acts or omissions relating to the performance of his official duties, not for those which affect his general moral character, or his conduct as a man of business, apart from his conduct as an officer. In such a case, as a learned judge has remarked, it is necessary to `separate the character of the man from the character of the officer.'"
(quoting MONTGOMERY H. THROOP, PUBLIC OFFICERS 363 (1892)). The learned judge to which Throop referred was Judge Underwood of the Kentucky Court of Appeals (before 1976, the Court of Appeals was the highest state court in Kentucky), speaking in 1829 in a case in which a court clerk was sought to be removed for embezzlement. Judge Underwood said:
I do not admit that it is necessary to attach to a clerk the turpitude of a criminal, to justify his removal from office. A very honest man may make a very indifferent clerk, and a man despicable for his vices may make an excellent clerk. It is proper to separate the character of the man, from the character of the officer, and when that is done, it may readily be perceived that there might be great propriety in making a distinction between the rules for the trial of the man for crime, and those for the trial of the officer, for breaches of good behaviour in office. This court has no power to remove a clerk for crimes committed, so long as he discharges the duties of his office well, nor should it be induced to overlook breaches of good behaviour, because the officer is honest as a man, or acts from good motives.
Commonwealth v. Chambers, 24 Ky. (1 J.J.Marsh.) 108, 1829 WL 1166, at *28 (1829).
In Knabb, 198 Wash. at 678, 89 P.2d 1046, we cited to another nineteenth century treatise to the same effect:
Where the removal is to be for official misconduct or for misfeasance or mal-administration in office, the misconduct which shall warrant a removal of the officer must be such as affects his performance of his duties as an officer and not such only as affect his character as a private individual.
FLOYD R. MECHEM, PUBLIC OFFICES AND OFFICERS 290 (1890). We followed Knabb in State v. Miller, 32 Wash.2d 149, 152, 201 P.2d 136 (1948); State ex rel. Zempel v. Twitchell, 59 Wash.2d 419, 427, 367 P.2d 985 (1962); Danielson, 72 Wash.2d at 859, 435 P.2d 963; State ex rel. LaMon v. Westport, 73 Wash.2d 255, 259, 438 P.2d 200 (1968) overruled on *1054 other grounds by Cole, 103 Wash.2d 280, 692 P.2d 799; Bocek v. Bayley, 81 Wash.2d 831, 836, 505 P.2d 814 (1973) overruled on other grounds by Cole, 103 Wash.2d 280, 692 P.2d 799. By the time we held in Chandler the 1984 amendments to the recall statute codified the common law, the common law of Washington was unequivocal that acts of malfeasance sufficient to subject a public officer to recall must be connected with the performance of official duties. Thus, we have already given meaning to the recall statute by holding it codified the common law. The common law, i.e., our cases, are where we must turn to find the meaning of the statute. Unless, that is, we wish to overrule Chandler and hold the statutory amendments did not codify the common law, and we are now free to interpret the statute at our whimsy, free of 60 years of case law. The majority does just that, without explicitly overruling Chandler or explaining why we should just simply ignore our case law on recall elections.
We have spoken about new statutory enactments and their effect on the law:
"No statute enters a field which was before entirely unoccupied. It either affirms, modifies, or repeals some portion of the previously existing law. In order, therefore, to form a correct estimate of its scope and effect it is necessary to have a thorough understanding of the laws, both common and statutory, which heretofore were applicable to the same subject. Whether the statute affirms the rule of the common law on the same point, or whether it supplements it, supersedes it, or annuls it, the legislative enactment must be construed with reference to the common law; for in this way alone is it possible to reach a just appreciation of its purpose and effect. Again, the common law must be allowed to stand unaltered as far as is consistent with the reasonable interpretation of the new law."
In re Tyler's Estate, 140 Wash. 679, 689, 250 P. 456, 51 A.L.R. 1088 (1926) (quoting Perry v. Strawbridge, 209 Mo. 621, 108 S.W. 641 (1908)). The more customary articulation of this principle is "a statute will not be construed in derogation of the common law unless the legislature has clearly expressed that purpose." Staats v. Brown, 139 Wash.2d 757, 766, 991 P.2d 615 (2000). See also Carson v. Fine, 123 Wash.2d 206, 213, 867 P.2d 610 (1994).
The majority opinion construes the recall statute to be in derogation of the common law. But there is not a shred of legislative history indicating the Legislature intended to change Washington common law and disconnect malfeasance in office from the performance of official duty. Such a drastic change in long-standing common law would surely have been the subject of commentary in the bill report or in the statute itself. The intent of the Legislature in enacting the recall statute was to codify the common law, as we held in Chandler, not to stand it on its head. By construing the recall statute to apply to any unlawful act, the majority opinion mandates precisely the contrary intent of the Legislature.
Moreover, a key ingredient of the recall statute the majority fails to note or discuss is the statute's structure. The sentence "Additionally, `malfeasance' in office means the commission of an unlawful act" appears as a subparagraph of the first paragraph of the statute. RCW 29.82.010(1)(b). It does not appear as a sentence standing alone and of equal weight with the first paragraph. As a subparagraph, RCW 29.82.010(1)(b) is subject to the same modifiers that appear in the senior paragraph. That is, the phrase "that affects, interrupts, or interferes with the performance of official duty" must apply to whatever subheadings appear below it if we are to give any weight to the structure the Legislature gave the recall statute.[3]
I therefore agree with the statutory analysis of RCW 29.82.010 Justice Johnson undertakes in his dissent: a nexus between the alleged malfeasance and the performance of official duties is an essential touchstone to recalling a public officer.
*1055 I also part company with the majority when it finds Pearsall-Stipek may have committed malfeasance in office by conduct amounting to the crime of false swearing pursuant to RCW 9A.72.040. The majority errs when it determines the crime of false swearing in Washington can be committed in court or in other official proceedings.
The Legislature created the crimes of perjury in the first and second degree with materiality of the falsehood squarely in mind. A person commits first degree perjury when that person makes a "materially false statement" under oath in "any official proceeding." Similarly, a person commits second degree perjury when that person makes a "materially false statement" when being examined under oath regarding an insurance contract or when such person acts with intent to mislead a public servant in the performance of his or her duty. A "materially false statement" means:
any false statement oral or written, regardless of its admissibility under the rules of evidence, which could have affected the course or outcome of the proceeding; whether a false statement is material shall be determined by the court as a matter of law[.]
RCW 9A.72.010(1). An "official proceeding" is one:
before any legislative, judicial, administrative, or other government agency or official authorized to hear evidence under oath, including any referee, hearing examiner, commissioner, notary, or other person taking testimony or depositions[.]
RCW 9A.72.010(4). Plainly, in each of these instances, the false statement under oath must materially affect the outcome of a proceeding. For example, a witness's falsehood under oath must affect the outcome of the case to constitute perjury in the first degree. Similarly, a witness's false statement to an insurance adjuster about a claim must affect the insurer's decision about the existence or extent of coverage to constitute perjury in the second degree.
By contrast, the crime of false swearing makes no reference to any kind of official proceeding or specific statutory proceeding when it states:
A person is guilty of false swearing if he makes a false statement, which he knows to be false, under an oath required or authorized by law.
RCW 9A.72.040(1).
Prior Washington case law has clearly held the crime of false swearing cannot be committed in an official proceeding. In State v. Wilson, 83 Wash. 419, 145 P. 455 (1915), a case arising under an earlier version of our criminal code, we held the crime of second degree perjury (the equivalent of false swearing now) was not a lesser included offense of first degree perjury. A similar reading of the perjury and false swearing statutes appeared in State v. Jacobson, 74 Wash.App. 715, 726, 876 P.2d 916 (1994), where the Court of Appeals stated:
Jacobson also claims the court erred in refusing to give the lesser instruction on false swearing. "A person is guilty of false swearing if he makes a false statement, which he knows to be false, under an oath required or authorized by law." RCW 9A.72.040(1). False swearing does not require the statement to have been made in an official proceeding. To give a lesser included instruction: (1) each element of the lesser offense must be a necessary element of the offense charged, and (2) the evidence in the case must support an inference that the lesser crime was committed. State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978). The second prong has been interpreted as requiring that the evidence in the case must support an inference that only the lesser crime was committed. State v. Rodriguez, 48 Wash.App. 815, 818-19, 740 P.2d 904, review denied, 109 Wash.2d 1016 (1987).
Jacobson admits the evidence supports an inference that all of the elements of first degree perjury are met except the official proceeding element. Since the statement was made in an official proceeding, no rational trier of fact could conclude the evidence supported an inference that the lesser but not the greater offense was committed.
Thus, Pearsall-Stipek could not be guilty of perjury unless her false statements under *1056 oath in court-related proceedings were material. They were not. Likewise, she could not be guilty of false swearing if the alleged false statement under oath were in a judicial proceeding. As the false statements occurred in court, she could not be guilty of false swearing.
This conclusion makes sense. The Legislature could not have intended every misstatement under oath, including simply mistaken statements, however immaterial, to be punished as perjury. Similarly, the Legislature could hardly have intended every impeachment of a witness to be false swearing. The crime of false swearing appropriately applies to circumstances outside the courtroom, where a person violates his or her oath in signing a document.
I consider it remarkable the majority embarks on this fresh reading of the recall statute. Appellant Washam has not urged such a reading. While it is true no justice now sitting on the Court was sitting in 1984 when our predecessors held the 1984 amendments to the recall statute codified the common law set forth in our cases, and while it is equally true we are now in a new decade, new century, and new millenium, a decent respect for our usual rule of stare decisis requires some explanation of why we should throw away more than 60 years of decisions on recall elections without so much as a passing wave at what has gone before and why the policy embodied in our cases ought now to be different. In 1984, we said in Chandler: "We believe the [recent amendments to the recall statute] indicate a legislative intent to place limits on the recall right, i.e., to allow recall for cause yet free public officials from the harassment of recall elections grounded on frivolous charges or mere insinuations." Chandler, 103 Wash.2d at 274, 693 P.2d 71. What new policy revelations have the majority divined to compel its sweeping new interpretation of the recall statute?
Recall is not the Washington State equivalent of a parliamentary vote of no confidence. Nor is it the tool of political vendetta to be used by one party against officials of the other when someone calculates such a move may yield momentary political advantage. The appropriate remedy for citizens dissatisfied with an elected official's conduct is to seek that official's defeat at the ballot box in the next regular election.[4]
In this case, Pearsall-Stipek's statements under oath do not reflect well on her. But they do not form the basis for recall under RCW 29.82.010.
NOTES
[1] Washam has been a longtime foe of Pearsall-Stipek, bringing recall petitions against her prior to the one at issue in this case. See In re Recall of Pearsall-Stipek, 129 Wash.2d 399, 918 P.2d 493 (1996) (concerning petitions brought by Washam); In re Recall of Pearsall-Stipek, 136 Wash.2d 255, 961 P.2d 343 (1998) (petitions brought by another party, but containing many of the same charges as Washam's petitions).
[2] Much of Washam's briefing focuses on the fact that Pearsall-Stipek misrepresented her educational background during her political campaigns. However, Washam has not based his recall petition on any violation of campaign laws.
[3] Second degree perjury is the giving of a materially false statement in an examination under oath under the terms of an insurance contract or with the intent to mislead a public servant in the performance of his or her duty. RCW 9A.72.030(1). There has been no allegation that Pearsall-Stipek made false statements under these circumstances.
[4] In his dissent, Justice Johnson accepts that a reading of the statute "could lead one to believe any unlawful act may be grounds for recall," but goes on to conclude that the "amendment's legislative history reveals a contrary intent." Dissent at 1051. We disagree. The originally proposed version of RCW 29.82.010 came from the Senate. When it was sent to the House its definitional component read:

For the purposes of this chapter:
(1) "Malfeasance in office" means an unlawful act committed wilfully by any elective public officer;
(2) "Misfeasance in office" means the fulfillment of a statutorily imposed duty in an unlawful or improper manner by any elective public officer;
(3) "Violation of the oath of office" means the wilful neglect or failure by an elective public officer to perform faithfully a duty imposed by law.
1st Engrossed Substitute Senate Bill 3984, at 2 (Jan. 11, 1984).
The House Committee on Constitution, Elections and Ethics amended the proposed bill to its current form, which states:
(1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
(a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
(b) Additionally, "malfeasance" in office means the commission of an unlawful act;
H.B. Rep. (S.S.B.3984), 48th Leg., Reg. Sess. at 4 (Feb. 17, 1984).
The House Bill Report describes the committee change, stating that it "[a]lters the definitions of "misfeasance" and "malfeasance" in office and applies these terms to any wrongful conduct that affects the performance of official duty. References to duties being statutorily imposed and unlawful acts being wilfully committed are deleted." H.B. Rep. at 3.
The original Senate bill did not include general "wrongful conduct" within the definition of either malfeasance or misfeasance. The House greatly expanded these definitions by "appl[ying] these terms to any wrongful conduct that affects the performance of official duty." Id. By doing so the House made conduct that was originally not sufficient to constitute malfeasance or misfeasance (e.g., general "wrongful conduct") sufficient only if it "affects, interrupts, or interferes with the performance of official duty."
We also note that the dissent relies on case law from this court defining the terms misfeasance and malfeasance. Each of the opinions relied upon were written prior to the Legislature's creation of statutory definitions for these terms. See, e.g., State ex rel. Nisbet v. Coulter, 182 Wash. 377, 47 P.2d 668 (1935); State ex rel. Knabb v. Frater, 198 Wash. 675, 89 P.2d 1046 (1939); Danielson v. Faymonville, 72 Wash.2d 854, 435 P.2d 963 (1967) (overruled On other grounds by Cole v. Webster, 103 Wash.2d 280, 692 P.2d 799 (1984)). While we do not quarrel with the dissent's analysis of these cases, they have no relevance in defining terms that have subsequently been defined by the Legislature.
[5] In his dissent, Justice Talmadge refers to the recall procedure of Arizona, citing with approval their system of requiring payment by recall petitioners for every subsequent recall election held against a public officer after a first, and unsuccessful, recall election is held during an officer's term of office. Dissent at 1054, n. 3. What Justice Talmadge fails to note is that Arizona, like many other states that allow recall elections, permits the recall of elected officers without cause, even "to get rid of an abnoxious and unsatisfactory officer with whom, for any or no reason whatever ... they have become displeased." Abbey v. Green, 235 P. 150, 154, 28 Ariz. 53 (1925) (citations omitted); see also Comment, The Use and Abuse of Recall: A Proposal for Legislative Recall Reform, 67 Neb.L.Rev. 617, 625-32 (1988). The inevitable state of turmoil predicted by the dissent has apparently not crippled Arizona's political system.
[6] The dissent states that "the Legislature could hardly have intended every impeachment of a witness to be false swearing." Dissent at 1056. Case law establishes the general principle that extrinsic evidence may normally be used to impeach a witness only with respect to material, as opposed to collateral, matters. State v. Babich, 68 Wash.App. 438, 443, 842 P.2d 1053 (1993); State v. Lubers, 81 Wash.App. 614, 623, 915 P.2d 1157 (1996); State v. Alexander, 52 Wash.App. 897, 901-02, 765 P.2d 321 (1988) ("Contradictory or impeaching testimony is collateral if it could not be shown in evidence for any purpose independent of contradiction"). If a witness lies about a collateral matter, the opposing party may cross-examine the witness as to this point, but if the witness adheres to the fabricated testimony, the inquiry must end. Crisp v. Nursing Homes, Inc., 15 Wash.App. 599, 604, 550 P.2d 718 (1976); Alexander, 52 Wash.App. at 901, 765 P.2d 321. In contrast, with respect to a material matter, extrinsic evidence may be brought in to challenge the testimony. Babich, 68 Wash.App. at 443, 842 P.2d 1053. Under the dissent's construction, the latter form of impeachment would often form the basis for a first degree perjury conviction. But the former would most often be subject to no penalty, despite the fact that it is the only circumstance in which the opposing party must rely solely upon a witness' legal obligation to tell the truth. If that obligation is nonexistent there is no incentive for the witness to tell the truth, there is no chance the truth will be gleaned from an external source, and in the end, the truth will lie hidden from the trier of fact. In our opinion, the Legislature could not have intended this result. See Bour v. Johnson, 122 Wash.2d 829, 835, 864 P.2d 380 (1993) (We avoid statutory interpretations that are "[s]trained, unlikely, or unrealistic").
[7] The reliance on Jacobson by Justice Talmadge's dissent is similarly misplaced. Apart from other potential problems with Jacobson's holding, it does not appear to stand for the proposition the dissent claims. In Jacobson, the materiality of the defendant's misstatement was undisputed and the court appears to have determined as a matter of law that the statement was made in an official proceeding. State v. Jacobson, 74 Wash. App. 715, 726, 876 P.2d 916 (1994). Since the two factors that distinguish first-degree perjury and false swearing were established (materiality and official proceeding), the evidence could not "support an inference that only the lesser crime was committed." Id. (quoting State v. Rodriguez, 48 Wash.App. 815, 818-19, 740 P.2d 904 (1987))(emphasis added). The only issue for the court to resolve was whether a lesser included offense instruction was warranted. The court concluded it was not. Contrary to the dissent's view, the court did not hold that false swearing can only occur outside of an official proceeding.
[8] Washam, in his reply brief, states that approximately 60,000 mail-in ballots had already been received by Pierce County on October 30, 1998, the day the Tacoma News Tribune article was published. He also notes that out of the 196,580 votes cast for the position of Pierce County Auditor, Pearsall-Stipek received only 90,160. Reply Br. at 11. The source of Washam's figures is not in the record before this Court.
[1] Laws of 1984, ch. 170, § 1.
[2] We said in Chandler v. Otto, 103 Wash.2d 268, 272, 693 P.2d 71 (1984), the 1984 amendments to the recall statute, enacting the language now at bar, "codify the definitions of misfeasance, malfeasance, or violation of the oath of office in accordance with case law definitions...." The majority opinion overrules this holding and purports to define the statute as if we just woke up to a new day and were writing on a clean slate.
[3] The majority ends its discussion of statutory construction this way: "Thus, we conclude that the only statutory requirement relating to an "unlawful act" is that it be "in office." Majority at 1042. Because the recall statute can apply only to people who are "in office," the majority's conclusion shows great mastery of the obvious.
[4] Dale Washam is currently pursuing recall of Pearsall-Stipek and has made her defeat as Pierce County auditor something of a cottage industry. In re Recall of Pearsall-Stipek, 129 Wash.2d 399, 918 P.2d 493 (1996); In re Recall of Pearsall-Stipek, 136 Wash.2d 255, 961 P.2d 343 (1998). This is Mr. Washam's fourth recall effort. Pearsall-Stipek, 136 Wash.2d at 259, 961 P.2d 343. Mr. Washam, who argued this case against Pearsall-Stipek, not only participated in the recall efforts but he was her opponent three times. He even attended depositions of Pearsall-Stipek in civil actions brought by others in state and federal court. The people of Arizona have wisely enacted the following provision: "After one recall petition and election, no further recall petition shall be filed against the same officer during the term for which he was elected unless the petitioners signing the petition first, at the time of application for the subsequent recall petition, pay into the public treasury from which such election expenses were paid all expenses of the preceding election." ARIZ. REV. STAT. § 19-202(B) (West 1998).